STATE OF NEBRASKA, APPELLEE, V. PATRICK J. GREEN, APPELLANT.
471 N.W.2d 402

Filed June 28, 1991.   No. 90-456.

James C. Stecker for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Patrick J. Green appeals his Platte County Court convictions and sentences for (1) attempted third degree assault on a peace officer, (2) reckless driving, (3) refusal to submit to a chemical test to determine alcohol content, and (4) refusal to submit to a preliminary breath test to determine alcohol content.

This is the second case in a trio of cases arising from separate events occurring in Platte County over the course of several days involving this same defendant. See, *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991); *State v. Green, post* p. 492, 471 N.W.2d 413 (1991).

We affirm in part and in part reverse and remand with directions.

In this appeal, Green alleges six assignments of error: (1) The trial court erred in finding that Green's waiver of counsel was made voluntarily, knowingly, and intelligently; (2) the trial court erred in failing to appoint standby counsel; (3) the trial court erred in permitting Green to introduce evidence of his prior misconduct; (4) the evidence was insufficient to support the convictions; (5) the trial court erred in finding two prior offenses valid for enhancement purposes; and (6) the sentences were excessive.

By amended complaint, Green was charged in the county court for Platte County with the offenses of which he was convicted and with driving while under the influence of alcoholic liquor. The original complaint alleged the same counts, except that Green had been charged with third degree assault on a peace officer instead of attempted third degree assault on a peace officer.

Green represented himself at all stages of the proceedings. He requested a jury trial, which was held on June 15, 1989.

Green was acquitted on the charge of driving while under the influence of alcoholic liquor, and he was found guilty of all other counts on which he was ultimately tried. On July 10, 1989, an enhancement hearing was held on the conviction of refusal to submit to a chemical test. The court found that the current conviction of refusal to submit to a chemical test was Green's third such conviction in 10 years, which finding subjected the defendant to an enhanced penalty for that offense. Upon the conclusion of a sentencing hearing conducted on July 25, 1989, Green was sentenced as set forth in part VI of this opinion.

Green timely appealed his convictions to the district court for Platte County, which affirmed the county court's judgments. Timely appeal to this court followed. In both of the appeals Green has been represented by counsel.

## I. WAIVER OF COUNSEL

On April 18, 1989, Green was arraigned in the county court on the charge of third degree assault on a peace officer. The court explained the nature of the charge and the possible penalty. After the count was amended by the State to attempted third degree assault on a peace officer, the court advised Green of the nature of the amended charge and the possible penalty. When the court asked Green if he desired an attorney to represent him, Green stated that he did, but that he did not want an attorney from Platte County. The court told Green that he could retain his own attorney. Green was further informed by the court that if he could demonstrate to the court that he could not afford an attorney, the court would appoint counsel, but that Green could not make the choice as to whom the court would appoint. Green then indicated that he would complete a poverty affidavit and application for court-appointed counsel. If a felony defendant desiring court-appointed counsel asserts indigency, a court must require him or her to complete an affidavit of indigency. Neb. Rev. Stat. § 29-1804.07 (Reissue 1989). See, also, Neb. Rev. Stat. § 29-1804.13 (Reissue 1989) (a court may require such an affidavit from an indigent misdemeanant who may be punished by imprisonment and who seeks court-appointed counsel). When the court again inquired

as to whether Green wanted an attorney, Green stated, "I certainly do, but I don't know if I'll be happy with yours." After the court asked if he was claiming that he was financially unable to hire an attorney, Green stated that he would not know until he checked the affidavit.

At a later arraignment that same day on the remaining charges, Green was advised of certain constitutional and statutory rights, including the right to court-appointed counsel, the pleas that could be entered, and the consequences of those pleas. The court informed Green of the nature of the remaining charges and the possible penalties associated with those charges. After Green was advised of the nature of the charges and the possible penalties, the court asked Green if he wanted an attorney to represent him. Green responded that he definitely wanted an attorney and that he did not believe he had the funds to hire an attorney on his own. After Green expressed his concerns with attorneys in Platte County, the court told him that he did not have the right to choose the attorney whom the court would appoint. When Green asked the court how he would know that he was not being appointed a biased attorney, the court advised him that it would appoint counsel who it was satisfied was not biased or prejudiced. Upon Green's protests that he did not have any input in the matter, the court stated, "Sometimes beggars can't be choosey, Mr. Green." Green thereupon remarked: "Is that what you're saying?—I would like to have that on the record. Thank you. That's what I was after." When the court attempted to explain that a rotation system for court-appointed attorneys was used, Green interrupted the court, complaining that he had no choice in the matter.

On April 25, 1989, Green next appeared to enter his pleas. The court asked Green whether he wanted court-appointed counsel, whether he would retain his own attorney, or whether he would proceed on his own. Green responded:

> I found that I cannot afford to hire my own attorney, but I've also found out by interviewing some local attorney's [sic] that in order them — for them to represent me, they would apparently be biased because they were afraid that they might be jeopardizing the legal plunder in which

they're receiving from the county. So I have no alternative but to defend myself.

When the court asked Green whether he wanted court-appointed counsel, he reiterated that he did not think he could find an unbiased attorney in Platte County. He further affirmed that although he could not afford to retain counsel, he did not want the court to appoint counsel. Green confirmed by proceeding pro se that he understood he was waiving the right to an attorney.

Green argues that because the trial court failed to advise him of the pitfalls of self-representation or the decided advantage of legal representation, his waiver of counsel was not knowingly and intelligently made. It is then claimed that due to this failure, the judgment must be reversed and the cause remanded for rearraignment and a new trial.

In *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991), we held that a trial court should warn a defendant who has the right to court-appointed counsel of the dangers and disadvantages of self-representation, but that the warning is not required. In the absence of an on-the-record warning, a voluntary, knowing, and intelligent waiver of counsel may be found if the record as a whole so reflects. *Id.*

As the court reasoned in *Green, ante* p. 328, 470 N.W.2d 736 (1991), this defendant has long been involved in the judicial system. He has often elected to waive counsel and proceed pro se. In two of his cases which were appealed to this court, Green represented himself at trial. See, *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990); *State v. Green*, 229 Neb. 493, 427 N.W.2d 304 (1988). Green even represented himself pro se in his 1988 appeal to this court. In an appeal to this court, we held that Green's waiver of counsel was voluntarily, understandingly, and intelligently made. See *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990).

It is abundantly clear from the record that Green was aware that he had the right to court-appointed counsel and that he could not choose whom the court appointed to represent him. He repeatedly blocked the court's efforts to appoint counsel, insisting, without any evidence to support him, that all the attorneys in Platte County were biased. Green stated that he did

not have the funds to hire his own counsel, that he did not desire a lawyer from Platte County, and that he had no choice but to proceed on his own. He acknowledged that he understood that by proceeding pro se, he was waiving his right to counsel. The evidence reflects that Green was "playing games" with the system in order to obtain a reversal from this court. After the trial court informed Green that "beggars could not be choosey," Green declared that he wanted that comment on the record and that was what he was after. A defendant may not utilize his or her right to counsel to manipulate or obstruct the orderly procedure in the court or to interfere with the fair administration of justice. *State v. Denbeck*, 219 Neb. 672, 365 N.W.2d 469 (1985). Although the trial court might have stated the legal proposition more artfully, its statement substantially is correct. See *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989) (an indigent defendant's right to counsel does not include the right to be represented by counsel of his choice or to be represented by an attorney he likes or with whom he has rapport). Green's recalcitrant attitude left the trial court with no option other than to permit him to represent himself. If the court had forced an attorney from Platte County upon Green, this appeal might well have been brought on the basis that Green's right to self-representation had been violated. See *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984).

The trial court was not clearly wrong in finding that Green's waiver of counsel was made voluntarily, knowingly, and intelligently. See *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991). This assignment of error is without merit.

## II. STANDBY COUNSEL

Green next asserts that due to the inherent problems associated with pro se representation, the county court should have appointed standby or advisory counsel to assist him in his self-representation, assuming a voluntary, knowing, and intelligent waiver of the right to counsel. In addressing this identical argument in *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991), we held that in view of Green's antagonism toward and unsubstantiated mistrust of the local bar and his

manipulative tactics, the trial court did not abuse its discretion in failing sua sponte to appoint standby counsel to assist Green. That statement applies with equal force to this case. In point of fact, the record in this case more strongly reflects Green's unexplained hostility toward attorneys from Platte County. This assignment of error is meritless.

## III. HEARING ON ADMISSIBILITY OF EVIDENCE

During cross-examination, Green elicited testimony from a police officer regarding a number of Green's prior arrests. Green in his case in chief testified about a number of occasions on which he was arrested by members of the Columbus Police Department. Green's apparent trial strategy was to show that the Columbus police officers were biased toward him.

In his third assignment of error, Green claims that reversible error was committed when the trial court failed to conduct a hearing on the admissibility of evidence after Green blindly and unknowingly began to present prejudicial and inadmissible evidence.

This issue was raised in *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991), wherein Green also represented himself at trial. As this court declared in that case:

> Green must accept the consequences of his election to proceed pro se. It is not up to the trial court to conduct the defense of a pro se defendant. A defendant's [right of self-representation as] guaranteed under *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), must be honored, even if in doing so, a court allows a defendant to do harm to himself or herself.

*Ante* p. 339, 470 N.W.2d at 746.

This assignment of error is without merit.

## IV. SUFFICIENCY OF THE EVIDENCE

The substance of Green's fourth assignment of error is that the evidence was insufficient to sustain any of his convictions.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the

evidence. *State v. Lohman*, 237 Neb. 503, 466 N.W.2d 534 (1991). Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *Id.*

> " ' "On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt." ' [Citation omitted.]"

*State v. Cogswell*, 237 Neb. 769, 771, 467 N.W.2d 680, 681-82 (1991).

Viewed in the light most favorable to the State, the record reflects the following: Officer James A. Fairchild is a police officer employed by the Columbus, Nebraska, Police Department. He was on duty during the early morning hours of March 25, 1989. At that time, Officer Fairchild was in uniform and was driving a marked police car on patrol.

At approximately 1 o'clock on that morning, he observed Green's Thunderbird automobile, which was facing west, in the north lane of 11th Street between 24th and 25th Avenues. Fairchild's attention was drawn to the vehicle because it was being power braked. By "power braking," Fairchild meant that the vehicle was standing still with its right rear tire spinning on the pavement, causing a huge cloud of smoke to rise up from that tire. Fairchild followed the vehicle.

The Thunderbird was driven to 24th Avenue, where it turned south. The record is silent as to the rate of speed at which the car was driven to 24th Avenue. Fairchild testified that as the car was turning, it was moving at a "pretty good rate of speed." As the car was part way around the corner, it appeared to the officer that "the vehicle's tires locked up." The car slid to within a couple of inches of an automobile parked on the corner. Fairchild testified that as he continued to follow the vehicle, he was traveling in excess of 40 m.p.h. and was barely keeping up with the other car. From the record, it is not known what the posted rate of speed is for that area. When the Thunderbird slid to a stop at 23rd Avenue, Fairchild activated his overhead red

lights.

When the driver of the Thunderbird exited that car, Fairchild recognized him to be the defendant. Green immediately began yelling and directing profanity toward the officer. Fairchild smelled a strong odor of intoxicating liquor on Green's breath and observed Green's unsteady gait. Green's speech was slurred. Fairchild had received training in detecting persons driving motor vehicles while under the influence of alcoholic liquor, had made over 50 arrests for that offense, and had observed a number of persons drinking alcoholic liquor and the consequent effects. On four occasions, Green refused Fairchild's request to perform field sobriety tests.

During the above-described events a police sergeant, Ray Jahn, arrived to render assistance. When Fairchild asked Jahn to retrieve an apparatus so that a preliminary breath test could be administered, Green stated: "[F]uck you. I refuse to take the test." As Jahn attempted to read a preliminary breath test form to Green, Green repeated the vulgarity and again refused to submit to a preliminary breath test. Jahn corroborated Fairchild's testimony regarding Green's drunken appearance, his refusals to perform field sobriety tests, and his refusals to submit to a preliminary breath test.

Green was arrested, handcuffed, and placed in the rear seat of Fairchild's patrol car. He was driven approximately eight blocks to the police station, where he was placed in a holding room with his left hand handcuffed to a bench. While in the holding room, Green repeatedly kicked a door to that room with such force that Fairchild thought the door was going to come off its hinges. To prevent damage to the door, Fairchild handcuffed Green's left ankle to the bench in the holding room. After Green resumed kicking the door, Fairchild decided to further handcuff Green and, after he entered the holding room, asked Green to extend his right arm so that it could be handcuffed. As Fairchild reached for Green's right arm, the defendant drew back and punched the officer in the stomach, driving Fairchild backward, according to the officer. Fairchild testified that he was in pain and that his stomach was sore for 2 or 3 hours. Fairchild handcuffed Green's right hand to the bench. The officer cuffed Green's right ankle to the bench. As

Fairchild was backing up, even though Green's ankle was restrained, he attempted to kick Fairchild in the groin. His foot came within 1 foot of that area.

At 1:45 a.m., Fairchild read to Green an implied consent form. As the officer recited the material contained on the form, Green chanted in a loud voice that he did not understand. When Fairchild asked Green what he did not understand, Green stated that the State broke its contract and that he did not have to provide a blood or urine sample. He then began repeating that he did not understand. After the form was read to Green, he was asked if he wanted to provide a blood or a urine sample. See Neb. Rev. Stat. § 39-669.09 (Reissue 1988) (a law enforcement officer who requires a chemical test may direct whether the test will be of the blood, breath, or urine, and if a blood or urine test is directed by the officer, the arrestee may choose between the two). Green continued stating that he did not understand. Green repeated this same behavior when Fairchild advised him of the consequences of a refusal to submit to a chemical test.

### 1. ATTEMPTED ASSAULT ON A PEACE OFFICER

"A person commits the offense of assault on an officer in the third degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer . . . while such officer . . . is engaged in the performance of his or her official duties." Neb. Rev. Stat. § 28-931 (Reissue 1989). "Bodily injury" to a peace officer is defined as "physical pain, illness, or any impairment of physical condition." Neb. Rev. Stat. § 28-109(4) (Reissue 1989). As the term is used in § 28-931, a police officer is a "peace officer." See *State v. Fly*, 236 Neb. 408, 461 N.W.2d 421 (1990).

A person is guilty of an attempt to commit a crime if he or she intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime. Neb. Rev. Stat. § 28-201(1)(b) (Reissue 1989). The statute defining criminal attempt requires that an actor's dangerous disposition be manifested by some intentional act which would constitute a

substantial step toward the completion of the crime if the circumstances were as the actor believed them to be. *State v. Sodders*, 208 Neb. 504, 304 N.W.2d 62 (1981). Whether a defendant's conduct constitutes a substantial step toward commission of a particular crime is, generally, a question for the trier of fact. *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987); *Sodders, supra*.

Fairchild testified that Green punched him in the stomach. Green argues that he only rubbed the officer's stomach, insulting the officer's weight. Even if Fairchild's testimony regarding the blow to his stomach is ignored for purposes of argument, there remains the officer's testimony that Green attempted to kick him in the groin. There is no doubt that if Green had actually kicked the officer in the groin, Fairchild would have experienced pain. Green's overt act in kicking in the direction of Fairchild and coming within 1 foot of the officer's groin constituted a substantial step toward the commission of the assault. Although the handcuffs may have prevented Green from in fact kicking the officer, that is legally of no consequence. One can be convicted of attempt even if the actual commission of the offense could not have occurred. See *State v. Benzel*, 220 Neb. 466, 370 N.W.2d 501 (1985) (one can be convicted of attempted murder even if the gun used to attempt to commit the murder was unloaded; the statute only requires that a defendant believes the gun to be loaded). That Green came within 1 foot of completing his assault bears out that he believed that he could kick the officer in the groin. It is uncontroverted that Fairchild was engaged in the performance of his duties and in uniform at the time of the attempted assault. Accordingly, the evidence was sufficient for the jury to find beyond a reasonable doubt that Green attempted a third degree assault on the officer.

## 2. RECKLESS DRIVING

"Any person who drives any motor vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property shall be deemed to be guilty of reckless driving." Neb. Rev. Stat. § 39-669.01 (Reissue 1988). Reckless driving lies somewhere between careless driving, see Neb. Rev.

Stat. § 39-669 (Reissue 1988), and willful reckless driving, see Neb. Rev. Stat. § 39-669.03 (Reissue 1988). The terms "wanton" and "reckless" have in practice been treated synonymously. *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990). See, also, NJI2d 8.81 (an act is wanton if it is done intentionally and with reckless disregard for the consequences). "Recklessness is the disregard for or indifference to the safety of another or for the consequences of one's act." *Dotzler, supra* at 188, 449 N.W.2d at 782.

Fairchild's testimony reflects that Green, shortly after power braking his Thunderbird, turned a corner at too high a rate of speed, slid toward a parked car, and came within inches of striking that car. Fairchild further testified that Green's vehicle also slid to a stop at a stop sign. From these described events, the jury could find beyond a reasonable doubt that Green operated his Thunderbird in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property.

### 3. PRELIMINARY BREATH TEST

Any law enforcement officer . . . may require any person who operates . . . a motor vehicle upon a public highway in this state to submit to a preliminary test of his or her breath for alcohol content if the officer has reasonable grounds to believe that such person has alcohol in his or her body, has committed a moving traffic violation, or has been involved in a traffic accident. Any person who refuses to submit to such preliminary breath test . . . shall be placed under arrest.

Neb. Rev. Stat. § 39-669.08(3) (Reissue 1988). Refusal to submit to a preliminary breath test is a separate offense from refusal to submit to a chemical test, which is prescribed in subsection (2) of § 39-669.08.

There is no doubt that Fairchild, at all relevant times, was a law enforcement officer who was duly authorized to make arrests for violation of traffic laws. It is likewise uncontroverted that Green was operating a motor vehicle upon a public highway in this state. See Neb. Rev. Stat. § 39-602(32) (Reissue 1988) (highway includes a street which is publicly

maintained when any part thereof is open to the use of the public for purposes of vehicular travel). Fairchild's testimony reflects that not only did the officer have reasonable grounds to believe that Green had driven recklessly in violation of § 39-669.01, but he further had reasonable grounds to believe that Green had alcohol in his body. Jahn's and Green's testimony shows that Green understood he was being asked to submit to a breath test and that the defendant's refusals to submit to the test on two occasions could not have been more emphatic or clear. There was sufficient evidence for the jury to find beyond a reasonable doubt that Green refused to submit to a preliminary breath test.

#### 4. REFUSAL TO SUBMIT TO A CHEMICAL TEST

Green argues that the evidence shows that he did not understand the nature of the request to submit to a chemical test. He claims that one cannot refuse to take the test when understanding is lacking.

The identical contention was advanced by Green in *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991). In that case, Green employed the same tactics as he did in this case when he was requested to submit to a chemical test. In *Green*, we held that Green could not evade the effect of the law by repeatedly screaming that he did not understand and that such actions evinced a clumsy attempt by Green to evade the purview of the law. The same is true in this case. From the evidence presented, the jury could find beyond a reasonable doubt that Green refused to submit to a chemical test.

### V. ENHANCEMENT

Green contends that because his prior convictions regarding refusing to submit to a chemical test were uncounseled, they cannot be used to enhance his current convictions of that offense.

This identical issue was raised in *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991). As recalled from that case, the State attempted to use three prior cases from 1980, 1984, and 1987 to enhance Green's current convictions of driving while under the influence of alcoholic liquor and refusal to submit to a chemical test. We held there that only the 1984 convictions of driving

while under the influence and refusal to submit to a chemical test could be used to enhance Green's current convictions of those offenses.

The State used those same convictions to enhance Green's penalty in this case. As in the holding in *State v. Green, ante* p. 328, 470 N.W.2d 736 (1991), only Green's 1984 conviction of refusal to submit to a chemical test may be used to enhance his penalty for his conviction in this case. Thus, the cause must be remanded with respect to Green's sentence for refusal to submit to a chemical test.

## VI. EXCESSIVENESS OF SENTENCES

For his reckless driving conviction, Green was sentenced to a term of imprisonment of 15 days, and his driving privileges were revoked for a period of 1 year from the date of his release from jail. On the conviction of attempted assault on a peace officer, Green was sentenced to a term of imprisonment of 1 year. The court imposed a fine in the sum of $100 for Green's refusal to submit to a preliminary breath test. Green's sentences of imprisonment were ordered to be served concurrently to any other sentences of incarceration. Since the cause must be remanded for resentencing concerning the conviction of refusal to submit to a chemical test, there is no need to further consider that sentence.

In his final assignment of error, Green contends that the trial court abused its discretion in failing to place him on probation.

"[T]he denial of probation and the imposition of a sentence within statutorily prescribed limits will not be disturbed on appeal unless there has been an abuse of discretion. [Citations omitted.]" *State v. Dean*, 237 Neb. 65, 77, 464 N.W.2d 782, 791 (1991). "In considering probation in lieu of a sentence, the court should not withhold imprisonment when a lesser sentence would depreciate the seriousness of the offender's crime or promote disrespect for the law." *Id.* (citing Neb. Rev. Stat. § 29-2260 (Reissue 1989)).

"'[I]n considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the

demeanor, attitude, and all facts and circumstances surrounding the life of the defendant. . . .' " [Citations omitted.]

*State v. Rodgers*, 237 Neb. 506, 511, 466 N.W.2d 537, 540 (1991).

"Every person convicted of reckless driving shall be punished by imprisonment . . . for a period of not less than five days nor more than thirty days, or by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by both such a fine and imprisonment." Neb. Rev. Stat. § 39-669.02 (Reissue 1988). Also applicable here is Neb. Rev. Stat. § 60-427 (Reissue 1988) (now codified at Neb. Rev. Stat. § 60-496 (Cum. Supp. 1990)), which provides that a court may, in its discretion, suspend for not less than 10 days nor more than 1 year the driver's license of a defendant convicted of certain motor vehicle violations.

Attempted third degree assault on a peace officer is a Class I misdemeanor, Neb. Rev. Stat. §§ 28-201(4)(d) and 28-931(2) (Reissue 1989), punishable by a sentence up to imprisonment of 1 year, a fine of $1,000, or both. Neb. Rev. Stat. § 28-106 (Reissue 1989).

Refusal to submit to a preliminary breath test is a Class V misdemeanor. § 39-669.08(3). Section 28-106(1) provides that a Class V misdemeanor is punishable by a fine of up to $100. The sentences imposed for all of the foregoing convictions are within the statutorily prescribed limits. Accordingly, we review the sentences to determine whether the court abused its discretion.

From and including 1976, Green has been convicted of numerous offenses, including possession of a controlled substance, resisting an officer, driving while under the influence of alcoholic liquor, refusal to submit to a chemical test, third degree assault, operating a motor vehicle while his driver's license was suspended, refusal to submit to a preliminary breath test, malicious injury to property, and possession of more than 1 ounce of marijuana. Despite his obvious alcohol abuse, Green denied that he has ever had problems with alcohol. From his statement contained in the presentence report (PSR), it is clear that Green does not take responsibility for his actions, but

attributes his problems primarily to police harassment. The probation officer recommended that Green not be placed on probation. A report from an alcohol and drug abuse counselor asserts: "[A]busive drinking is part of Mr. Green's preferred lifestyle . . . . Mr. Green perceives himself to be in direct conflict with those who advocate more traditional values, and clearly he rather enjoys his status as something of a radical." The counselor further reported that Green perceived no reason to change his behavior except to comply with the requirements of a court order.

Green has displayed a longstanding disrespect for the law and has formerly been convicted of refusing to submit to a preliminary breath test, offenses involving violence, and several driving offenses. His conduct at trial and documentation contained in the PSR more than show his unrepentant attitude. The record provides no support for the conclusion that Green will magically and instantaneously become a law-abiding citizen. Placement of Green on probation would depreciate the seriousness of the crimes of which he was found guilty and promote disrespect for the law. The county court did not abuse its discretion in failing to place Green on probation nor in imposing the sentences that it did for reckless driving, the attempted assault on Officer Fairchild, and Green's refusal to submit to a preliminary breath test.

The district court's affirmance is affirmed in part and reversed in part. The cause is remanded to the district court with the directions that it vacate and set aside the county court's sentence for refusal to submit to a chemical test and remand the matter to that court for further proceedings pursuant to law.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.