STATE OF NEBRASKA, APPELLEE,
v. JAMES MICHAEL HOWARD, APPELLANT.

571 N.W. 2d 308

Filed December 12, 1997.    No. S-96-741.

Casey J. Quinn, of Quinn & Wright, for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

Pursuant to verdict, the county court adjudged the defendant-appellant, James Michael Howard, guilty of refusal to submit to a preliminary breath test and of second-offense driving under the influence of alcohol, both in violation of Neb. Rev. Stat. § 60-6,197 (Reissue 1993), and of reckless driving, in violation of Neb. Rev. Stat. § 60-6,213 (Reissue 1993). The district court affirmed. The Nebraska Court of Appeals affirmed the refusal to submit and driving under the influence convictions, but by a divided opinion reversed the reckless driving conviction. *State v. Howard*, 5 Neb. App. 596, 560 N.W.2d 516 (1997). We granted further review on the separate petitions filed by Howard and the plaintiff-appellee, State of Nebraska. Howard asserts, in

summary, that the Court of Appeals erred in failing to find that the district court erred in failing to find that the county court erred in (1) admitting certain evidence and (2) finding the evidence sufficient to support the refusal to submit and driving under the influence convictions. The State urges that the Court of Appeals erred in reversing the reckless driving conviction. We affirm in part and in part reverse the judgment of the Court of Appeals and remand the cause with direction.

## II. FACTS

On August 18, 1995, at approximately 7 p.m., Vance Vogler was eastbound on Interstate 80 near Lincoln. He was driving in the left, or passing, lane when a green Jeep Cherokee came up behind him and began following him very closely. Vogler slowed down in an attempt to encourage the Jeep to give him a little more room; however, the Jeep continued to follow him closely, so that at the first opportunity Vogler pulled over into the right lane. After the Jeep had passed, Vogler observed it move abruptly into the right lane and cut off a minivan, causing the driver of that vehicle to slam on her brakes and swerve onto the shoulder of the Interstate. After observing this near collision, Vogler used a cellular telephone to report the behavior of the driver to the Nebraska State Patrol. Vogler further testified that the Jeep pulled away from him rapidly even though Vogler was driving 65 miles per hour, then the legal speed limit.

State Trooper Mark Funkhouser testified that he was driving west on Interstate 80 when, at approximately 7:30 p.m., he received an assignment to watch for a dark green Jeep Cherokee, about which the State Patrol had received citizen complaints. Funkhouser proceeded west until he met a group of vehicles which included the described Jeep. Several drivers in the group were flashing their vehicle headlights, and some were pointing forward toward the Jeep. Funkhouser noticed at that time that the Jeep was following a white van at a distance of about half the length of the Jeep. Funkhouser turned his vehicle around and proceeded east, following the group of vehicles that included the Jeep. At that point, Funkhouser saw the Jeep change from the left lane to the right lane, cutting off another vehicle as it did so. The Jeep then passed a semitrailer truck by

driving onto the right shoulder of the Interstate. After first warning the truckdriver by radio, Funkhouser also passed the truck on the shoulder. At this point, Funkhouser visually estimated that the Jeep was traveling at around 100 miles per hour. Funkhouser was able to catch up with the Jeep and pull it over by driving "as hard as my car would run," 122 miles per hour.

Funkhouser turned on his flashing lights, and the Jeep stopped. The driver, who was later identified as Howard, got out of the vehicle and in the process "kind of swayed out towards the highway." Funkhouser detected a strong odor of alcohol, placed Howard under arrest for reckless driving, handcuffed him, and placed him in the patrol vehicle. Funkhouser then noticed that the smell of alcohol was coming from Howard's breath and not from his vehicle and that Howard's eyes were quite watery. As a field sobriety test, Howard was asked to recite the alphabet. He did so twice; his speech was slurred, and he skipped the letter "W" both times.

Howard refused to take a preliminary breath test, stating that "he had three drinks and he didn't have anything to eat that day and he knew that the device would detect the alcohol." Based upon Funkhouser's training, education, and experience, and upon Howard's erratic driving, slurred speech, red watery eyes, strong odor of alcohol on his breath, sway in his walk, and general demeanor, Funkhouser concluded that Howard was intoxicated.

### III. HOWARD'S ASSIGNMENTS OF ERROR

#### 1. ADMISSION OF EVIDENCE

In connection with the first assignment of error, Howard asserts that the county court wrongly received Funkhouser's opinion as to Howard's speed of travel, Funkhouser's testimony as to Howard's refusal to submit to a preliminary breath test, and Funkhouser's opinion that Howard was intoxicated. The issues raised by the first two assertions present questions of law, in connection with which an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996); *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996). The issue raised by the third assertion, whether Funkhouser

should be considered an expert or a lay witness, see *State v. Johnson*, 215 Neb. 391, 338 N.W.2d 769 (1983), is reviewed for an abuse of discretion. Neb. Rev. Stat. §§ 27-701 and 27-702 (Reissue 1995); *State v. Thieszen*, 252 Neb. 208, 560 N.W.2d 800 (1997) (whether witness qualifies as expert is within discretion of trial court); *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991) (trial court given discretion in determining whether sufficient basis provided for lay witness' opinion testimony).

### (a) Speed

Howard first argues that the county court erred in allowing Funkhouser to testify about Howard's speed without the corroboration of a microwave, mechanical, or electronic speed measurement device as required by Neb. Rev. Stat. § 60-6,192 (Reissue 1993), which provides, in relevant part:

> Determinations made regarding the speed of any motor vehicle based upon the visual observation of any peace officer, while being competent evidence for all other purposes, shall be corroborated by the use of a radio microwave, mechanical, or electronic speed measurement device. The results of such radio microwave, mechanical, or electronic speed measurement device may be accepted as competent evidence of the speed of such motor vehicle in any court or legal proceeding when the speed of the vehicle is at issue.

"Reckless driving" is defined in § 60-6,213 as driving any "motor vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property . . . ."

We have determined that while speed alone does not support a conviction for "willful reckless driving," which is defined in Neb. Rev. Stat. § 60-6,214 (Reissue 1993) as driving "in such a manner as to indicate a willful disregard for the safety of persons or property . . . ," speed does have a bearing on whether one was driving dangerously "under the surroundings and attendant circumstances of the particular case," *State v. DiLorenzo*, 181 Neb. 59, 63, 146 N.W.2d 791, 794 (1966). Under the circumstances of this case, such is likewise the situation with the charge of reckless driving. Therefore, the evidence of Howard's

speed was adduced not to establish his rate of travel so as to prove a charge that he exceeded a particular speed limit, but, rather, as one piece of evidence tending to establish that he drove in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property. In short, whether Howard was driving 80 miles per hour or 120 miles per hour would not, in and of itself, determine whether he violated § 60-6,213. Accordingly, "the speed of" Howard's vehicle was not "at issue," as contemplated by § 60-6,192. As a consequence, Funkhouser's opinion was admissible notwithstanding that it was not corroborated. See *Com. v. Martorano*, 387 Pa. Super. 151, 563 A.2d 1229 (1989) (although statutory corroboration of officer's opinion was required in charge of driving at speed in excess of maximum limit, corroboration not required on charge of failing to drive at safe speed).

### (b) Preliminary Breath Test

Next, Howard urges that the county court should not have received Funkhouser's testimony that Howard refused to take a preliminary breath test. Without objection from the State, the county court had sustained Howard's pretrial motion to suppress "any evidence concerning any chemical tests of [his] blood, breath, or urine for the presence of alcohol" by noting on its trial docket: "Chemical test suppressed. Mot. in limine granted."

The motion made no mention of the preliminary breath test, and at trial, despite Howard's continuing objections, the county court allowed Funkhouser to testify that Howard refused to take the preliminary breath test. Howard contends that under the county court's order, his refusal to take the test should have been suppressed along with evidence concerning the later chemical test.

The problem with Howard's argument is that the preliminary test and the later chemical test are separate and distinct tests. Preliminary breath tests are authorized by § 60-6,197(3), which reads:

> Any peace officer . . . may require any person who operates . . . a motor vehicle in this state to submit to a preliminary test of his or her breath for alcohol concentration

if the officer has reasonable grounds to believe that such person has alcohol in his or her body, has committed a moving traffic violation, or has been involved in a traffic accident. Any person who refuses to submit to such preliminary breath test . . . shall be placed under arrest. Any person who refuses to submit to such preliminary breath test shall be guilty of a Class V misdemeanor.

Chemical tests are authorized by § 60-6,197(1):

Any person who operates or has in his or her actual physical control a motor vehicle in this state shall be deemed to have given his or her consent to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine.

Section 60-6,197(2) empowers a properly authorized peace officer to

require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine when the officer has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle in this state while under the influence of alcoholic liquor or drugs in violation of section 60-6,196.

Not only have we ruled that the refusal to submit to a preliminary breath test is a separate criminal offense from refusal to submit to a chemical test, *State v. Green*, 238 Neb. 475, 471 N.W.2d 402 (1991), we have written that "[t]he 'preliminary test' referred to in § 39-669.08(3) [now § 60-6,197(3)] is a different procedure and not such a 'chemical test' or 'chemical analysis' as to satisfy requirements for a conviction under § 39-669.07 [now § 60-6,197(4)]," *State v. Green*, 217 Neb. 70, 73-74, 348 N.W.2d 429, 431 (1984). The two tests were offered to Howard at different times and for different purposes; whereas the preliminary test was merely to determine whether alcohol

was present in Howard's breath, the chemical test was administered to determine whether the amount of alcohol in his breath or blood exceeded the limits permitted by Neb. Rev. Stat. § 60-6,196 (Reissue 1993). As both Howard's motion to suppress and the county court's order granting the motion refer only to chemical tests, the chemical test referred to in the suppression order is that referenced as such in the statutes and not that which the statutes reference as a preliminary breath test.

### (c) Intoxication

Howard misstates the record in maintaining that Funkhouser should not have been permitted to express his opinion that Howard was intoxicated. He contends that Funkhouser concluded before administering any field sobriety tests that Howard was intoxicated and that as a result, Funkhouser "failed to administer the field sobriety tests he was trained to give . . . ." Brief for appellant at 15. In fact, Funkhouser's testimony clearly shows that he administered a field sobriety test by asking Howard to recite the alphabet after arresting him for reckless driving but before arresting him for driving under the influence. At the point Funkhouser testified he decided no further field tests were necessary, Howard was already in the police cruiser and Funkhouser had made a number of observations, all of which indicated Howard was intoxicated.

Funkhouser was not required to put Howard through a particular set of field sobriety tests, nor is it relevant when Funkhouser reached his conclusion as to Howard's intoxicated condition, as long as Funkhouser's opinion was supported by an adequate foundation.

We have previously held that after sufficient foundation is laid, a law enforcement officer may testify that in his or her opinion the defendant was driving while intoxicated. *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988). Funkhouser had been trained to detect the physical and mental effects of alcohol on people, and he had been involved in the arrest of 150 to 200 intoxicated drivers. He testified that he observed Howard's driving in a dangerous manner; that Howard swayed when he left his vehicle after being stopped; that he smelled of alcohol; that he had watery eyes and slow, slurred speech; that he stated he

had been drinking; and that he twice failed in attempts to recite the alphabet. Thus, the county court did not abuse its discretion in permitting Funkhouser to testify that in his opinion Howard was intoxicated.

### (d) Conclusion

There is no merit to the first claim of error Howard assigns on the part of the Court of Appeals.

## 2. SUFFICIENCY OF EVIDENCE

In the second assignment of error, Howard challenges the sufficiency of the evidence to support the refusal to submit and the driving under the influence convictions. To the extent these claims present questions of fact, they are reviewed under the rule that on a claim of insufficiency of the evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996); *State v. Derry*, 248 Neb. 260, 534 N.W.2d 302 (1995). Questions of law, on the other hand, are reviewed as set forth in subpart (1) above.

### (a) Refusal to Submit

Howard's argument that there was insufficient evidence to support the refusal to submit conviction is subsumed in his meritless argument that the evidence relating thereto should have been suppressed. Accordingly, nothing more need be written in this regard.

### (b) Driving Under the Influence

In connection with his driving under the influence conviction, Howard claims that the evidence does not support a conclusion that he was intoxicated and that, in any event, the evidence does not support a conclusion that he had once before been convicted of driving under the influence.

### (i) Intoxication

As to the contention that the evidence does not support a conclusion that he was intoxicated, Howard's argument is that because Funkhouser jumped to the conclusion that Howard was intoxicated, Funkhouser neglected to give a number of field sobriety tests that he should have given. Therefore, Howard

contends that the State did not submit enough evidence to sustain a conviction on the driving under the influence charge. However, such is clearly not the case. As noted earlier, Funkhouser did administer a field sobriety test, which Howard failed twice. In addition, Funkhouser testified that he observed Howard's driving in a dangerous manner; that Howard swayed when he exited his vehicle after being stopped; that he smelled of alcohol; that he had watery eyes and slow, slurred speech; and that Howard stated he had been drinking. Taken together, the evidence was sufficient to permit the jury to find beyond a reasonable doubt that Howard was intoxicated.

The applicable rule is that in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997); *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996); *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995).

### (ii) Second Offense

Howard further urges that as the exhibit introduced at the enhancement hearing concerning his prior record failed to show a finding of guilt or conviction for the earlier charge, it should not have been received. This issue presents a question of law and is reviewed accordingly.

The exhibit at issue is a copy of a register of actions and an order from the Douglas County Court dated March 12, 1993, which contains a checklist reciting information about an earlier driving under the influence charge against Howard. The checkmarks show that on the single charge of driving under the influence made against Howard, he pled no contest and was found guilty. The checkmarks on the form also reflect that Howard was represented by counsel, was advised of the nature of the charge against him, and had been advised of and had waived his rights. Another checkmark indicates that Howard entered his plea knowingly, understandingly, intelligently, and voluntarily.

Howard's assignment of error is based on the fact that only one checkmark is placed after the entries pertaining to the no contest plea and the finding of guilt. Citing *State v. Orduna*, 250 Neb. 602, 550 N.W.2d 356 (1996), and other cases, Howard argues that a checklist which is used as a substitute for a formal written journal entry must be prepared with as much care and certainty as any record of a court in order to import absolute verity. While that is true, and while it may also be true that the exhibit would have been clearer if the checkmarks had been shorter or if they had been placed in the boxes immediately preceding the phrases "Defendant enters plea(s) of" and "Defendant is found," the exhibit nonetheless clearly shows that Howard entered a plea of no contest to the only count of driving under the influence charged against him and that he was found guilty. Under that circumstance, the county court made no error in receiving the exhibit.

### (c) Conclusion

Accordingly, there is no merit to the second claim of error Howard assigns to the Court of Appeals.

### IV. STATE'S ASSIGNMENT OF ERROR

The State contends that the Court of Appeals erred in finding merit in Howard's claim that the district court erred in failing to rule that the county court improperly rejected his request that the jury be instructed on careless driving, as it is a lesser-included offense of reckless driving. The State's assignment presents a question of law and is so reviewed.

"Careless driving" is defined as "driv[ing] any motor vehicle . . . carelessly or without due caution so as to endanger a person or property . . . ." Neb. Rev. Stat. § 60-6,212 (Reissue 1993). In contrast, as noted in part III(1)(a) above, reckless driving involves an indifferent or wanton disregard for the safety of others or property.

A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defend-

ant of the greater offense and convicting the defendant of the lesser offense. *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Parks*, 245 Neb. 205, 511 N.W.2d 774 (1994); *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993).

In determining whether an offense is a lesser-included one, a court initially looks not to the evidence in a particular case, but, rather, only to the elements of the criminal offense. See, *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997); *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995); *White, supra.*

The threshold question, therefore, is whether a driver can drive recklessly without at the same time driving carelessly. While we have not confronted that question before, we have observed that "[r]eckless driving lies somewhere between careless driving . . . and willful reckless driving . . . ." *State v. Green*, 238 Neb. 475, 486-87, 471 N.W.2d 402, 410 (1991). We cannot imagine a situation in which a motor vehicle could be driven with "wanton disregard for the safety of persons or property" without its also being driven "without due caution." Therefore, careless driving is a lesser-included offense of reckless driving.

That being so, the analysis must shift to the second prong of the test, whether the evidence presents a rational basis to support a possible verdict for acquittal of reckless driving and conviction of careless driving. In that regard, we recall that during his travel on Interstate 80, Howard closely followed Vogler's vehicle and failed to back off when Vogler slowed; cut off a minivan so abruptly that the woman driving it had to slam on her brakes and swerve onto the shoulder of the road; sped away from Vogler who was driving at the speed limit; followed a vehicle at 60 miles per hour with only 10 feet between the two vehicles; switched lanes in front of a vehicle, cutting it off; passed a semitrailer truck by driving on the shoulder; accelerated to a speed of approximately 100 miles per hour; and drove a vehicle after having had three drinks and nothing to eat. The sum of these actions exemplifies recklessness, as defined in *Green*, 238 Neb. at 487, 471 N.W.2d at 410, i.e., a " 'disregard for or indifference to the safety of another or for the consequences of one's act.' "

An instruction on a lesser-included offense is not appropriate when there is no evidence submitted that would offer a rational

basis for acquitting the defendant of the greater offense and convicting him of the lesser offense. *Huebner, supra.* See *State v. Tamburano*, 201 Neb. 703, 271 N.W.2d 472 (1978). Where the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater crime but not necessary for the lesser offense, a duty rests on the defendant to offer at least some evidence to dispute this issue if he or she wishes to have the benefit of a lesser offense instruction. *Huebner, supra; Tamburano, supra.* Howard introduced no evidence to dispute the wealth of evidence the State adduced on the issue of his recklessness. The State's assignment of error is therefore meritorious.

## V. JUDGMENT

As foreshadowed in part I, we affirm that portion of the Court of Appeals' judgment which affirms the district court's affirmance of the conviction of Howard on the refusal to submit and second-offense driving under the influence charges, reverse that portion of the Court of Appeals' judgment which reverses the district court's affirmance of the conviction of Howard on the reckless driving charge, and remand the cause to the Court of Appeals with the direction that it issue a mandate in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.