STATE OF NEBRASKA, APPELLEE,
v. WILLIAM L. PARKS, APPELLANT.

573 N.W. 2d 453

Filed February 6, 1998. No. S-96-1012.

Julie E. Bear, of Reinsch & Slattery, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

William L. Parks was convicted by a jury in the district court for Sarpy County of knowing or intentional child abuse, in violation of Neb. Rev. Stat. § 28-707(1) (Reissue 1995). Parks filed an appeal in the Nebraska Court of Appeals, in which he contended that the district court erred in failing to instruct the jury on a lesser-included offense of negligent child abuse. Parks also asserted that the evidence was insufficient to support his conviction and that his sentence of 18 to 36 months' imprisonment was excessive. The Court of Appeals affirmed Parks' conviction and sentence. See *State v. Parks*, 5 Neb. App. 814, 565 N.W.2d

734 (1997). Parks then petitioned this court for further review, which we granted. We conclude that the district court erred in not instructing the jury on the lesser-included offense of negligent child abuse, and therefore, we reverse the Court of Appeals' judgment affirming the district court's judgment and remand the cause for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 13, 1996, Parks and Grace Madsen took their then 6-month-old son to the emergency room of the University of Nebraska Medical Center for treatment of an injury to his right leg. The physician who initially examined the baby noticed that the leg was externally rotated and flexed at the hip and that the thigh was swollen. Suspecting a fracture or dislocation of the right femur, the physician asked the baby's parents if he had experienced any recent trauma.

Madsen reported that the baby had been fussy and had a high fever on the previous day, April 12, so she and Parks brought him to the emergency room, where he was diagnosed with an ear infection and given antibiotics. Madsen said that later the same day she found the baby's leg twisted in the bars of his crib and noticed it was swollen. On the next day, April 13, Madsen noticed that the baby's right leg remained swollen and that he was not using it, so she and Parks brought him back to the emergency room. Parks was present during Madsen's recitation of this medical history, but did not contribute significantly.

After conducting a physical examination and reviewing x rays, physicians determined that the baby had a displaced spiral fracture of his right femur. According to the baby's physicians, a spiral fracture is caused by the application of a twisting or "torquing" motion to the bone. Because the femur is one of the strongest bones in the body, a child under the age of 1 would not generally be able to generate sufficient force to injure himself in this manner, and some external cause is usually responsible for the injury. The most common cause of this type of injury in a child under the age of 3 is abuse, followed by other causes such as motor vehicle accidents and falls from heights. Because the baby's injury was inconsistent with the history of his leg becoming caught in his crib, his physicians suspected abuse and

conducted a further examination. They found that the baby had a bruise near his right eye and a fracture of his right tibia which had nearly healed. Pursuant to hospital policy, the suspected abuse was reported to police. Parks left the hospital and went home shortly after learning that police had been notified.

Investigator Steve Miller of the Bellevue Police Department was assigned to the investigation. Miller first interviewed the physicians who treated the baby and then contacted Parks at 4 a.m. on April 14 to question him about the baby's injury. Parks initially disclaimed any knowledge of the incident, but then told Miller that the injury occurred early on the evening of April 12 while he was changing the baby's diaper. Parks told Miller that the baby was lying on his stomach in his crib when Parks entered the room to check on him. As Parks approached the crib, the baby's feet were to Parks' right and his head to the left. Parks told Miller that he grasped the baby's right leg with one hand and, in one rapid motion, turned the baby over onto his back while rotating him 90 degrees so that his feet were toward Parks. When he turned the baby over, Parks heard a snapping noise. Parks told Miller that immediately prior to this incident, the baby had been crying and Parks was angry with him. Parks admitted to Miller that he had problems controlling his anger, but he stated that he never intended to hurt the baby.

Parks was charged with "knowingly or intentionally plac[ing] a minor child in a situation that endanger[ed] his or her health or life; or . . . cruelly confin[ing] or cruelly punish[ing] a minor child, in violation of Section 28-707(1)," a Class IV felony. Parks entered a plea of not guilty. Trial to a jury was held on July 15, 1996. The physicians who examined and treated the baby testified regarding his injury and the history given by Madsen. Miller testified as to statements which Parks made to him during his questioning, as summarized above.

Parks testified on his own behalf and contradicted Miller's testimony in some respects. He stated that he left the hospital on the night of April 13 after a nurse told him that only one parent could stay with the baby. Parks said that he was awakened during the night by Miller and another detective, who took him to the police station. Parks testified that during the ensuing 2 hours of questioning, Miller repeatedly suggested how the baby's

injury must have happened, but that he never agreed to Miller's characterization and refused to speak without an attorney or provide a written statement. Parks denied telling Miller that he intentionally hurt his son.

On cross-examination, Parks testified that on the date of the baby's injury, he and Madsen had been arguing all day and that she stated that she was going to leave with the baby. Parks admitted that he was angry with Madsen, but he stated that the baby's crying did not bother him and denied telling Miller that it did. Parks testified that on April 12, "I found [the baby's] leg . . . caught in the crib, but I had already went to turn him and I didn't think it would hurt him. I don't know if it did or not." Parks stated that he entered the baby's room again later in the day to change his diaper. When he turned the baby over by grasping his hand and leg, he heard a popping noise, which he thought was the crib creaking. He said that he was under stress at this time due to the argument with Madsen. Later, Parks noticed that the baby was not using his right leg. Parks admitted during cross-examination that he is sometimes unable to control his anger. Parks stated that he did not tell Miller about the baby's leg being caught in the crib because he was worried about the baby at the time Miller was questioning him.

The district court found that there was insufficient evidence to support the charge that Parks had placed the baby "in a situation that endangers his or her life or health," in violation of § 28-707(1)(a), and therefore, instructed the jury only on the charge that Parks had knowingly or intentionally "cruelly punished" the baby in violation of § 28-707(1)(b). The jury returned a verdict of guilty, and Parks was subsequently sentenced to imprisonment for a term of 18 to 36 months. Parks appealed his conviction and sentence to the Court of Appeals.

Citing its decision in *State v. Fitzgerald*, 1 Neb. App. 315, 493 N.W.2d 357 (1992), the Court of Appeals held that negligent child abuse is a lesser-included offense of intentional child abuse. *State v. Parks*, 5 Neb. App. 814, 565 N.W.2d 734 (1997). However, the court determined that there was no rational basis in the evidence to convict Parks of the lesser-included offense of negligent child abuse because he did not present expert medical testimony to support his claim that the baby's injuries could

have occurred accidentally. Thus, the Court of Appeals found no error in the refusal of the district court to give a lesser-included offense instruction. The Court of Appeals also held that the evidence was sufficient to support Parks' conviction and that his sentence was not excessive. We granted Parks' petition for further review.

## ASSIGNMENTS OF ERROR

Parks contends that the district court erred in (1) failing to instruct the jury on the lesser-included offense of negligent child abuse, (2) finding the evidence sufficient as a matter of law to support the jury's verdict finding Parks guilty of intentional child abuse, and (3) imposing an excessive sentence.

## SCOPE OF REVIEW

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997); *State v. Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997); *State v. Glantz*, 251 Neb. 947, 560 N.W.2d 783 (1997).

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Stubbs*, 252 Neb. 420, 562 N.W.2d 547 (1997); *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996); *State v. Brozovsky*, 249 Neb. 723, 545 N.W.2d 98 (1996).

## ANALYSIS

The State argues that by his failure to tender a proposed lesser-included offense instruction, Parks failed to preserve this issue for appeal. It is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the omission

of certain elements have the effect of withdrawing from the jury an essential issue or element in the case are prejudicially erroneous. *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997); *State v. Kinser, supra*. In *State v. Grant*, 242 Neb. 364, 370, 495 N.W.2d 253, 257 (1993), *overruled on other grounds by State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993), we stated that "when the record demonstrates that a trial court understood the nature of the orally requested jury instruction, an appellate court may review the trial court's refusal to give the orally requested instruction."

The record in this case reflects the following discussion during the instruction conference:

> MR. BOYLAN [Parks' counsel]: As far as the rest of the instructions, my objection would be that as I mentioned yesterday, there should be, in my opinion, some language as to whether the jury decides it was done intentionally or negligently, and I think that comes from the way the statute is worded.
>
> THE COURT: The State has to prove that it's done intentionally or knowingly.
>
> MR. BOYLAN: My point is that I think the jury could decide that it was done negligently.
>
> THE COURT: If they do it's not guilty. You can argue that, as far as I'm concerned. You can argue it in the sense they have to require that it was — State has to prove that it was done intentionally or knowingly. If they find it was done negligently he is not guilty and he is off intentional child abuse.

The State admits that "[i]t may have been clear enough that the defense wanted the jury to have the option of considering negligent child abuse . . . ." Brief for appellee at 8. We agree and therefore conclude that this issue was preserved for appeal and is properly before us.

A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the

lesser offense. *State v. Al-Zubaidy, ante* p. 357, 570 N.W.2d 713 (1997); *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). In Nebraska, all crimes are statutory, and no act is criminal unless the Legislature has in express terms declared it to be so. *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 313 N.W.2d 438 (1981). Parks was charged under § 28-707, which provides in pertinent part:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

(a) Placed in a situation that endangers his or her life or health; or

(b) Cruelly confined or cruelly punished; or

(c) Deprived of necessary food, clothing, shelter, or care.

. . . .

(3) Child abuse is a Class I misdemeanor if the offense is committed negligently.

(4) Child abuse is a Class IV felony if the offense is committed knowingly and intentionally and does not result in serious bodily injury as defined in section 28-109.

(5) Child abuse is a Class III felony if the offense is committed knowingly and intentionally and results in serious bodily injury as defined in such section.

(6) Child abuse is a Class IB felony if the offense is committed knowingly and intentionally and results in the death of such child.

The State argues that no lesser-included offense instruction is possible under this statute because it defines a single offense of child abuse with varying penalties to be determined by the sentencing judge depending upon the defendant's state of mind when the offense was committed. In support of this argument, the State relies upon *State v. Schneckloth, Koger, and Heathman, supra*, in which we construed Neb. Rev. Stat. § 28-313 (Reissue 1995) as defining a single offense of kidnapping, with different penalties depending upon whether the victim was voluntarily released unharmed, and *State v. Heathman*, 224 Neb. 19, 395 N.W.2d 538 (1986), in which we construed Neb. Rev. Stat. § 28-912 (Reissue 1995) as defining a single offense of escape,

but providing for an enhanced penalty if certain aggravating factors were present. We find the child abuse statute under which Parks was convicted to be structurally different and therefore distinguishable from the statutes construed in *Schneckloth, Koger, and Heathman* and in *Heathman.* The words "knowingly, intentionally, or negligently" are included in § 28-707(1), which defines the elements of child abuse, as well as in § 28-707(3) through (6), which subsections define the range of penalties. Because the Legislature has specifically included the defendant's state of mind as an element of the offense as well as a factor to be considered in determining the classification of the offense and penalty, we interpret the child abuse statute as defining several offenses ranging in severity from a Class I misdemeanor to a Class IB felony.

Although Parks was originally charged in the alternative with violation of § 28-707(1)(a) or (b), the district court submitted only the question of whether Parks abused the baby by "knowingly or intentionally . . . cruelly punish[ing]" him. Therefore, we must determine from the language of § 28-707 whether there exists a lesser-included offense of committing child abuse by *negligently* causing a child to be "cruelly punished." In determining whether a lesser crime is a lesser-included offense, a court applies a statutory elements test, wherein it initially looks not to the evidence, but, rather, only to the elements of the criminal offense. *State v. McBride,* 252 Neb. 866, 567 N.W.2d 136 (1997); *State v. Null,* 247 Neb. 192, 526 N.W.2d 220 (1995).

We agree with the Court of Appeals that misdemeanor child abuse is a lesser-included offense of felony child abuse under § 28-707. The proscribed conduct for each offense is exactly the same; it is the actor's state of mind which differentiates the offenses. If the abuse is committed knowingly and intentionally, it is a felony; if committed negligently, it is a misdemeanor. We have recognized that one state of mind can be included within another. For example, in *State v. Green,* 238 Neb. 475, 486-87, 471 N.W.2d 402, 410 (1991), we held that "[r]eckless driving lies somewhere between careless driving . . . and willful reckless driving . . . ." In *State v. Howard, ante* p. 523, 534, 571 N.W.2d 308, 316 (1997), we held that careless driving is a lesser-included offense of reckless driving, noting: "We cannot

imagine a situation in which a motor vehicle could be driven with 'wanton disregard for the safety of persons or property' without its also being driven 'without due caution.' " Thus, we conclude that because negligent child abuse falls somewhere between intentional abuse and lawful conduct, misdemeanor child abuse is a lesser-included offense of felony child abuse under the statutory elements test. As stated by the Court of Appeals in this case: "It seems axiomatic that one who intentionally punishes a child, for example by burning with a cigarette, also is negligent, since his or her conduct obviously fails to meet the standard of how a reasonably prudent person would treat or discipline a child." *State v. Parks*, 5 Neb. App. 814, 819, 565 N.W.2d 734, 738 (1997). Because it is impossible to commit intentional child abuse without also committing negligent child abuse, the first prong of the statutory elements test was met in this case.

We disagree with the Court of Appeals, however, with respect to the second prong of the test, i.e., whether the evidence presents a rational basis to support a verdict of acquittal of intentional and knowing child abuse and conviction of negligent child abuse. The medical testimony at trial established that a spiral fracture of the femur would not normally result from a small child accidentally catching his leg in the bars of his crib and that an injury of this nature was "suspicious for child abuse." The Court of Appeals reasoned that this evidence afforded no rational basis for concluding that the baby's injury was not inflicted intentionally. While we agree that an inference of abuse can be drawn from the medical testimony, we do not agree that it affords a basis from which the jury could have drawn an inference as to Parks' state of mind at the time the injury was inflicted, i.e., whether he was acting knowingly and intentionally or negligently. As we have noted, the defendant's state of mind is the only factor which differentiates misdemeanor child abuse from felony child abuse under § 28-707.

We further disagree with the conclusion of the Court of Appeals that Parks had a duty "to support his 'negligent causation' defense with medical evidence," 5 Neb. App. at 825, 565 N.W.2d at 741, relying on the rule stated in *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994), that when the character of

the injury is not objective, expert testimony is required to establish the cause and extent of the injuries. This principle of civil law is inapplicable to a criminal case, where due process requires the prosecution to prove, beyond a reasonable doubt, every factual element necessary to constitute the crime charged. See, *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). It is constitutionally impermissible to relieve the State of its obligation to prove requisite criminal intent. See *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). It is true that where the prosecution has offered uncontroverted evidence on an element necessary for conviction of the greater crime but not necessary for the lesser offense, the defendant has a duty to offer at least some evidence to dispute the issue if he wishes to have the benefit of a lesser-included offense instruction. *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994), *overruled on other grounds by State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996); *State v. Tamburano*, 201 Neb. 703, 271 N.W.2d 472 (1978). We find that the record in this case contains such evidence.

The prosecution contended that Parks knowingly and intentionally injured the baby as punishment for his crying and thereby committed felony child abuse in violation of § 28-707(1)(b) and (4). Intent is the state of the actor's mind when the actor's conduct occurs. *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). The intent with which an act is committed may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident. *State v. Kunath*, 248 Neb. 1010, 540 N.W.2d 587 (1995). From the evidence in this case, a jury could have concluded that Parks, angered at the baby's crying, knowingly and intentionally punished him by exerting sufficient force to cause the spiral fracture. While the evidence is therefore sufficient to sustain a conviction of felony child abuse, there was also evidence which, if believed by the jury, would have warranted a different result. Parks testified that the baby's injury occurred while he was positioning him to change his diaper, a lawful act from which no inference of intent to inflict cruel punishment can be drawn. Parks further testified that this occurred while he was

under stress because of an argument with Madsen and that he was not angry with the baby and did not intend to hurt him. A jury could conclude from this evidence that Parks, while angry and distracted by the argument with Madsen, negligently grasped the baby by the leg and unintentionally exerted more force than necessary to turn him over, thereby causing his injury. Thus, a jury could have found that Parks inflicted cruel punishment upon the baby, i.e., the spiral fracture of his femur, but did so negligently rather than knowingly and intentionally. There is, therefore, a rational basis upon which a jury could have acquitted Parks of felony child abuse but convicted him of misdemeanor child abuse. The district court erred in not giving a lesser-included offense instruction, and Parks is therefore entitled to a new trial. Because the cause will be remanded for this reason, we do not address Parks' other assignments of error.

REVERSED AND REMANDED FOR A NEW TRIAL.