STATE OF NEBRASKA, APPELLEE, V. RICK STUBBS, APPELLANT.
562 N.W.2d 547

Filed May 2 , 1997.   No. 95-940.

Blaine T. Gillett, of Lincoln County Public Defender's Office, for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BOSLAUGH and GRANT, JJ., Retired.

WHITE, C.J.

In the winter of 1992, Dale Edmisten was involved in an automobile accident while driving to Colorado to visit his niece, Janie Knickerbocker, for the holidays. During his visit, it appeared as though Edmisten was confused and experienced trouble walking. After staying with his niece, Edmisten was driven back home to his farmhouse, which was located 7 miles

from Sutherland, Nebraska. Edmisten had lived at that residence since 1918.

During the spring of 1993, Rick Stubbs, appellant, visited Edmisten on numerous occasions and would offer to purchase various items from Edmisten. There is evidence that Edmisten sold items to Stubbs on more than one occasion.

Edmisten testified that after a visit from Stubbs, Edmisten would notice that items such as tools would be missing from his home. Edmisten, however, could not identify which items were missing and did not see Stubbs actually take any of his property.

In March 1993, Knickerbocker visited Edmisten. While visiting her uncle, she observed that he could recall what had occurred in the past but had some difficulty with understanding what was occurring in the present. She noticed that Edmisten shuffled when he walked and that he had some difficulty moving. During that visit, Knickerbocker also noted items present in her uncle's home.

On March 26, 1993, Knickerbocker obtained power of attorney for both Edmisten's health and financial affairs. She testified that it appeared that Edmisten understood what he was signing.

While Knickerbocker at that time felt that Edmisten could not live by himself, she decided to postpone plans to put him into a nursing home until the end of May, and she returned to Colorado. Edmisten continued living by himself, cooking his own meals, dressing himself, and picking up his mail.

Knickerbocker returned to her uncle's home in May 1993. She noticed that several items which she had seen in March were now gone: an anvil, an oxbow, an Indian war ax, an antique dresser set, two trunks, a .22-caliber rifle, and a John Deere tractor. She then notified the county sheriff's office, reporting the items that were missing. Officer Mike Dye of the Lincoln County sheriff's office investigated the matter. Dye spoke to Stubbs, who allegedly said that he had spoken to Edmisten, that he had been to his house, and that he had purchased some items.

Stubbs was later charged by information on March 2, 1994. Specifically, Stubbs was charged with the knowing and intentional abuse of a vulnerable adult by exploitation. He was arraigned on April 11, and trial was held on March 21, 1995.

At trial, several witnesses testified as to the physical and mental health of Edmisten. Knickerbocker testified that Edmisten appeared confused after the accident in 1992, that he shuffled when he walked, that such movement was difficult, that he needed assistance in getting groceries, and that he had a poor diet, consisting mainly of milk.

Sandra Bay, a neighbor of Edmisten's, testified that Edmisten would drive his truck to his mailbox. According to Bay, Edmisten would sometimes misjudge the distance to the mailbox and veer slightly off the roadway. She also testified that Edmisten's physical health was deteriorating, that is, he was having a difficult time walking and moving very well.

Kimberly Eckhoff and Melvin Eckhoff, longtime family friends, often brought Edmisten food because it appeared that he was not eating very well. Kimberly Eckhoff cleaned Edmisten's house on one occasion. She noted that the house was a mess on that occasion and testified that Edmisten would shuffle as he walked. Melvin Eckhoff took Edmisten to the grocery store at least once a week after learning that store employees were worried that Edmisten was having a difficult time maneuvering through their store. Melvin Eckhoff would also take Edmisten to the bank.

Ray Seifer, another neighbor, testified that he saw Edmisten once or twice a week. He described Edmisten as not being very mobile and noticed that because of his age, Edmisten was having problems remembering things.

Dr. George Cooper, a family practitioner in North Platte since 1962, was called by the State as an expert witness. In July 1993, Dr. Cooper examined Edmisten. Dr. Cooper found that Edmisten's lungs were clear, that he had normal arterial and venous circulation, that he did not have a deficit such as paralysis, and that his blood pressure was normal. Dr. Cooper diagnosed Edmisten as being mildly senile and having vertigo and proprioception deficit, which is the loss of a sense of balance. He reported that Edmisten was both physically and mentally active without full awareness of the consequences. He also concluded that it was very likely that Edmisten could be considered a vulnerable adult.

When Edmisten was asked whether he lived independently, he testified that he did not live with anyone, cooked his own meals, dressed himself, watched television, took care of his bills, bathed himself, and did not have any medical problems for which he was taking medicine. When asked whether he was in pretty good health, Edmisten answered, "I thought so." Edmisten testified that he would know where he was and what he was doing.

Evidence was also submitted to demonstrate Stubbs' alleged exploitation of Edmisten. Knickerbocker stated at trial that a lot of her uncle's property had disappeared: an oxbow, an anvil, an Indian war ax, a dresser set, two trunks, quilts, and the John Deere 4630 tractor. Bay testified that she observed a red and white pickup being driven past Edmisten's house and onto his driveway several times one day when Edmisten was gone. In addition, Bay testified that she noticed that a considerable number of items had disappeared from Edmisten's workshop. Kimberly Eckhoff and her husband, Randy, also observed a red pickup being driven past Edmisten's home one day. Melvin Eckhoff mentioned that he noticed items missing from Edmisten's workshop.

Edmisten stated at trial that he thought items which he owned had been taken by Stubbs. He could not, however, list specifically what had been taken. Finally, Edmisten, as well as Knickerbocker and Bay, testified that they had never actually seen Stubbs wrongfully take property from Edmisten.

Evidence was introduced to the effect that the John Deere tractor was in a general state of disrepair. Several individuals testified as to the value of the tractor. The witnesses concluded that the value was somewhere between $5,500 and $11,000.

Edmisten testified that he did not remember offering to sell the tractor to Stubbs. To the contrary, Stubbs' mother testified that Edmisten told her that he wanted $3,500 for the tractor and would not accept anything less. It appears as though Stubbs' mother submitted a check to Edmisten for $3,500 in April 1993 on Stubbs' behalf.

At the close of the evidence, the court held that there was sufficient evidence to sustain a verdict on the "substantial . . . functional impairment" portion of the vulnerable adult statute. Later

on appeal, the State stipulated that the only issue was whether Edmisten suffered a "substantial functional impairment."

The jury found Stubbs guilty of abuse of a vulnerable adult, and he was subsequently sentenced. Stubbs appealed his conviction.

On appeal, the Nebraska Court of Appeals held that while the evidence supported a finding that Edmisten was physically and mentally aging, it did not support a finding that he suffered a substantial functional impairment which left him incapable of caring for himself or living independently. *State v. Stubbs*, 5 Neb. App. 38, 555 N.W.2d 55 (1996). The court also held that the evidence did not show that Stubbs took Edmisten's property by means of undue influence, breach of a fiduciary relationship, deception, or extortion. Finally, the court held that the State failed to show a nexus between Edmisten's impairment and the alleged exploitation. The court reversed the trial court's judgment and vacated Stubbs' conviction and sentence. The State then petitioned this court for further review.

The State contends that the Court of Appeals erred in (1) finding that the evidence presented at trial was insufficient to prove that Stubbs exploited Edmisten; (2) finding that the evidence presented at trial was insufficient to prove that Edmisten was a "vulnerable adult" as defined by Neb. Rev. Stat. § 28-371 (Reissue 1995); and (3) holding that the State must show a nexus between a vulnerable adult's impairment and the exploitation of a vulnerable adult when this showing is not required by the statute.

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Woods*, 249 Neb. 138, 542 N.W.2d 410 (1996).

The State argues that the Court of Appeals erred in holding that there was insufficient evidence to demonstrate that Edmisten was a vulnerable adult as defined by § 28-371. We disagree and affirm the Court of Appeal's decision with regard to this issue.

Stubbs was convicted under Neb. Rev. Stat. § 28-386(1) (Reissue 1995), which states that a "person commits knowing and intentional abuse of a vulnerable adult if he or she through a knowing and intentional act causes or permits a vulnerable adult to be . . . (d) Exploited."

The initial step when determining whether such statute has been violated is to determine whether the victim was a vulnerable adult. A vulnerable adult is "any person eighteen years of age or older who has a substantial mental or functional impairment or for whom a guardian has been appointed under the Nebraska Probate Code." § 28-371. In the instant case, assessment of whether Edmisten could be considered a vulnerable adult is limited to a finding of whether he had suffered a substantial functional impairment as stipulated to by the State. Pursuant to Neb. Rev. Stat. § 28-368 (Reissue 1995), substantial functional impairment means a "substantial incapability, because of physical limitations, of living independently or providing self-care as determined through observation, diagnosis, investigation, or evaluation."

In this case, there is insufficient evidence to establish that Edmisten was incapable of living independently or providing self-care. Edmisten testified himself that he was living independently, cooking his own meals, bathing and dressing himself, paying his bills, and eating solid foods such as steak and pizza, and that he was in good health, experiencing no medical problems. Knickerbocker testified that she did not feel that it was necessary to move Edmisten into a nursing home until the end of May 1993. Dr. Cooper testified that Edmisten experienced no respiratory, circulatory, or heart problems and reported that his blood pressure was normal.

There is evidence that Edmisten was naturally aging. Such a process took a toll on Edmisten's body and mind. However, moving slowly and forgetting some things are not sufficient to support a finding that an individual is unable to live independently. Therefore, the State has failed to meet its burden of establishing that Edmisten suffered from a "substantial functional impairment." As a result, the State failed to adequately demonstrate that Stubbs violated § 28-386. For these reasons, the Court of Appeals was correct in vacating Stubbs' conviction

and sentence. Since the preceding analysis is dispositive of the instant case, the State's remaining assignments of error need not be addressed.

AFFIRMED.

CONNOLLY and GERRARD, JJ., concur in the result.