STATE OF NEBRASKA, APPELLEE,
v. EUSEBIO L. BECERRA, APPELLANT.
573 N.W. 2d 397

Filed January 2, 1998.   No. S-96-1025.

Glenn A. Shapiro, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

GERRARD, J.

## I. INTRODUCTION

Pursuant to verdict, defendant-appellant, Eusebio L. Becerra, was adjudged guilty of kidnapping and of use of a firearm in the

commission of a felony. Becerra appeals, asserting that (1) there was insufficient evidence adduced at trial to support the kidnapping conviction and (2) he received ineffective assistance of counsel at trial. Because we determine that Becerra's claims are not supported by the record, we affirm the judgment of the district court.

## II. FACTUAL BACKGROUND

On January 5, 1996, at approximately 6:30 p.m., the victim, Melvin Washington, Jr., left work at Rotella's Bakery and saw a red two-door Blazer occupied by three men, one of whom was Becerra. Washington testified that he owed Becerra money for drugs that Becerra had recently supplied to Washington.

According to Washington, Becerra exited the Blazer holding a 9-mm handgun and asked Washington, "Where is the money?" Becerra held the gun in his right hand and showed Washington that he also had bullets. At that time, Becerra inserted the bullets into a clip and placed the clip into the gun while again asking Washington about the money. After Washington indicated that he was just about to retrieve the money, Becerra told Washington that his "time was up."

Becerra then engaged in conversation with Daniel Gonzalez, another occupant of the Blazer. Becerra and Gonzalez discussed what they were going to do with Washington. Gonzalez and the third individual from the Blazer, who has never been identified, reentered the Blazer, and Becerra and Washington entered Washington's sister's vehicle. Becerra continued to hold the gun in his hand and kept telling Washington that Washington had "fucked up."

Becerra instructed Washington to follow Gonzalez, while Becerra continued to hold the gun in full view of Washington. Becerra told Washington that they wanted Washington's Jeep as collateral for the drug debt. Washington's father was in possession of the Jeep that evening, so Washington was unable to comply with the demand.

Washington testified that he knew he had no choice but to do as Becerra instructed. Washington followed the Blazer, driving toward 108th and Harrison Streets, onto 84th Street, then onto the Interstate, and eventually ended up on 10th Street at a steak

house. Becerra kept telling Washington that Washington had "messed up."

As Becerra and Washington waited in the parking lot on 10th Street, the Blazer left the parking lot and went further up the street. About 10 minutes later, Gonzalez and the third individual returned in an Oldsmobile. Becerra then took Washington's keys, and Washington got into the back seat of the Oldsmobile. Gonzalez also got into the back seat of the Oldsmobile, and he held an AK-47 rifle, which he kept pointed toward Washington's feet.

The group left 10th Street, getting back onto the Interstate, and then stopped at a gas station. From there, the group took Washington to a warehouse somewhere in the vicinity of 62d Street. Washington testified that he believed they were looking for a place to execute him because Becerra exited the car, checked the warehouse, and told Gonzalez that there were too many cars going back and forth and that it was not a good spot.

At that point, the four drove to Lake Manawa in Iowa. At the lake, Becerra told Washington to take off his clothes. Washington removed his pants and shoes, leaving him wearing only his T-shirt, boxer shorts, and socks. The temperature outside that evening was below freezing, with a windchill factor below zero.

Becerra told Washington to get out of the car and to stand in front of the vehicle. Becerra and Gonzalez were still carrying their weapons. At that time, Becerra instructed Washington to come toward them and to open his mouth so that Becerra could stick his gun into Washington's mouth. Washington did not comply with Becerra's request.

Becerra kept telling Washington, "you messed up, mother fucker." Gonzalez and Becerra followed Washington as he walked away from them and began kicking him and beating him. Becerra beat Washington in the face with the handgun, and Gonzalez hit Washington in the back with the rifle. Finally, Washington turned around, hit both Becerra and Gonzalez, and then ran across the frozen lake and dove into the snow. Noticing that the ice was cracking, Becerra and Gonzalez returned to their vehicle. Other cars were driving in the area at that time as well. After they returned to the vehicle, Becerra and Gonzalez

began to leave. Seeing Washington get up out of the snow, however, Becerra attempted to get Washington to return to the car, saying "[C]ome here, Melvin," and "I am not going to do that."

Becerra and Gonzalez eventually did leave. After making sure that the Oldsmobile was gone, Washington ran across the lake, crossed the street, and crossed a canal to get help on the other side, where he had observed houses. Washington knocked on a door, seeing that a television was on in the house, but no one answered. Washington then went to the next house, noting that people were there, and knocked on the door and the window. A woman opened the door and let Washington inside. The Council Bluffs, Iowa, police arrived, and Washington was transported to a hospital.

Lynda Bergeron, the woman who aided Washington, testified that Washington was bleeding from his mouth and that Washington fell down upon entering her house. Bergeron, who happened to be a nurse, further testified that Washington was "somewhat losing consciousness," due to exposure to the cold.

Becerra was charged by information with kidnapping with intent to terrorize, in violation of Neb. Rev. Stat. § 28-313(1) (Reissue 1995), and with use of a firearm to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1995). A jury convicted Becerra of the two felonies, and on September 6, 1996, Becerra was sentenced in the district court. At the sentencing hearing, Becerra's attorney requested that the judge consider sentencing Becerra to "[a] period of probation, minimal incarceration so that [Becerra] will have a chance to get his life on track and become a decent citizen." The trial judge responded by noting that kidnapping is a Class IA felony and that life imprisonment is the only possible sentence allowed by statute. Becerra was sentenced to life imprisonment for kidnapping and to a consecutive term of imprisonment of 2 to 5 years for use of a firearm to commit a felony.

### III. ASSIGNMENTS OF ERROR

Becerra asserts that the evidence adduced at trial was insufficient to support a finding of guilt on the charge of kidnapping. Becerra also claims that he was denied the effective assistance of counsel at trial, and, therefore, his Sixth Amendment rights were abridged.

## IV. STANDARD OF REVIEW

On review, a criminal conviction must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. In determining whether the evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented to the jury, which are within the jury's province for disposition. *State v. Freeman, ante* p. 385, 571 N.W.2d 276 (1997).

To state a claim of ineffectiveness of counsel as violative of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Turner,* 252 Neb. 620, 564 N.W.2d 231 (1997); *State v. Hansen,* 252 Neb. 489, 562 N.W.2d 840 (1997).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Stubbs,* 252 Neb. 420, 562 N.W.2d 547 (1997); *State v. Earl,* 252 Neb. 127, 560 N.W.2d 491 (1997).

The evidence presented at trial, taking the view most favorable to the State, reveals that Becerra forced Washington, using the threat of a 9-mm handgun, to follow the Blazer across town. Once at the parking lot on 10th Street, Becerra forced Washington to get into the back seat of the Oldsmobile. The group then drove around seeking a suitable place presumably for Washington's execution.

While inside the Oldsmobile, Washington was exposed to the threat of an AK-47 rifle and Becerra's 9-mm handgun. At Lake Manawa, Becerra was forced to remove almost all of his clothing and was ordered outside in below-freezing temperatures. Once outside the car, Becerra asked Washington to open his mouth so that Becerra could insert his gun into it. Becerra and Gonzalez then beat Washington in the face and back with their weapons, and both Becerra and Gonzalez kicked Washington.

Although the evidence described above was adduced primarily from the testimony of the victim, and Becerra presented contradictory testimony that he was acting under physical duress and served merely as a translator between Gonzalez and Washington, it is not within the province of this court to resolve conflicts in the evidence or to pass on the credibility of the witnesses at trial. Rather, we must determine whether the evidence described above is sufficient to support Becerra's conviction.

Becerra was convicted of kidnapping, in violation of § 28-313. Section 28-313(1) defines kidnapping as follows:

A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:

(a) Hold him for ransom or reward; or

(b) Use him as a shield or hostage; or

(c) Terrorize him or a third person; or

(d) Commit a felony; or

(e) Interfere with the performance of any government or political function.

"Abduction" is defined as restraining a person with intent to prevent his liberation by (1) secreting or holding him in a place where he is not likely to be found or (2) endangering or threatening to endanger the safety of any human being. Neb. Rev. Stat. § 28-312(2)(a) and (b) (Reissue 1995). "Restrain," in turn, is defined in relevant part as restricting a person's movement in such a manner as to interfere substantially with his liberty by means of force, threat, or deception. § 28-312(1)(a).

It is clear that evidence was presented which supports the jury's conclusion that Becerra both abducted and restrained Washington during the course of events that occurred on

January 5, 1996. Washington testified that he was taken at gunpoint from his place of employment, driven around while an AK-47 rifle was pointed in his direction, and eventually taken to Lake Manawa by Becerra and others.

The question, then, is whether the evidence supports a conclusion that Becerra had the requisite intent either when Washington was abducted or while Washington was being restrained. The jury was instructed that Becerra must have had the intent to terrorize Washington, to inflict serious bodily injury on Washington, or to kill Washington. This instruction comports with the requirements of § 28-313(1)(c) and (d) and, therefore, was proper.

We have recently defined what "terrorize" means within the context of § 28-313. See *State v. Robbins, ante* p. 146, 570 N.W.2d 185 (1997). In *Robbins*, we held that in the absence of a statutory definition, terrorize means to fill with terror or scare. Terrorize is a synonym for frighten, which means to markedly disturb with fear, throw into a state of alarm, make afraid, or terrify. Intent may be inferred from the words and acts of the accused and from the facts and circumstances surrounding the conduct. *Id.* Becerra abducted Washington at gunpoint, then Becerra forced Washington to strip down to his underwear at gunpoint at Lake Manawa in freezing temperatures, told Washington to open his mouth so that he could insert his gun into it, and beat Washington with the gun. There can be no serious dispute that the evidence regarding Washington's abduction and continued restraint, when taking the view most favorable to the State, sufficiently establishes Becerra's intent to terrorize Washington. Becerra's first assignment of error is wholly without merit.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Becerra claims that he received ineffective assistance of counsel during trial. Becerra bases his claim on his trial counsel's failure (1) to object to the admission into evidence of surveillance videotapes of the parking lot of Rotella's Bakery (exhibits 3 and 4), (2) to object to leading questions from the prosecutor, and (3) to offer jury instructions on the lesser-included offenses of false imprisonment or kidnapping as a Class II felony.

The Sixth Amendment to the U.S. Constitution guarantees every criminal defendant the right to effective assistance of counsel. *State v. Marchese*, 245 Neb. 975, 515 N.W.2d 670 (1994). To state a claim of ineffectiveness of counsel as violative of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997); *State v. Hansen*, 252 Neb. 489, 562 N.W.2d 840 (1997). However, where a defendant is unable to demonstrate sufficient prejudice, no examination of whether counsel's performance was deficient is necessary. *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991).

Becerra raises his ineffective assistance of counsel claim for the first time before this court. Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994).

### (a) Failure to Object to Exhibits 3 and 4

Becerra claims that his counsel's failure to object to the admission into evidence of exhibits 3 and 4 constituted deficient performance on the part of trial counsel that prejudiced Becerra. However, as previously noted, where a defendant is unable to demonstrate sufficient prejudice, no examination of whether counsel's performance was deficient is necessary. *State v. Morley, supra.* Exhibits 3 and 4 are surveillance videotapes of the parking lot of Rotella's Bakery. Exhibit 4 is a slow-motion version of exhibit 3 that isolates a few minutes shown in exhibit 3. Exhibit 3 is a high-speed, time-lapsed video that is nearly

impossible to decipher, thereby necessitating the use of the slowed version seen in exhibit 4. The entirety of exhibit 4 shows a Blazer backing out of a parking stall, turning in front of the video camera, and then exiting from view. None of the persons involved in this matter can be seen in exhibit 4. The only information that can be distilled from exhibit 4 is that a Blazer was present in the parking lot at approximately the same time that Washington was abducted. Becerra himself testified on cross-examination that he was in the parking lot at that time and that a Blazer was also present. Therefore, Becerra has failed to demonstrate sufficient prejudice as a result of the admission into evidence of exhibits 3 and 4 such that results of the trial would have been different but for trial counsel's allegedly deficient performance.

### (b) Failure to Object to Leading Questions

Becerra also claims that his trial counsel was ineffective in repeatedly failing to object to leading questions posed by the State during the presentation of its case in chief. The record establishes that while Becerra's counsel did not object to some leading questions by the prosecution, he did object to leading questions on several occasions at trial. In *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992), the defendant argued that his counsel provided ineffective assistance because he failed to request an instruction that the jury disregard certain evidence after the trial court sustained objections thereto because the evidence was procured through leading questions. We held that counsel's failure to request instructions that the jury disregard the evidence was not prejudicial because after counsel's objection was sustained, the State rephrased the question and elicited the exact same response. See *id*. We noted that if properly admitted evidence exists to establish that which improperly admitted evidence also establishes, any error in receiving the inadmissible evidence is harmless error and not grounds for a reversal. *Id*. In the instant case, when Becerra's counsel did object to leading questions, the State was able to rephrase the questions and elicit the sought-after responses from the witnesses.

Therefore, even if it could be shown that Becerra's trial counsel was deficient in failing to object to certain leading questions

by the prosecution, a matter we do not decide, Becerra has not demonstrated that he was prejudiced or that the results of the trial would have been different but for counsel's allegedly deficient performance.

### (c) Failure to Offer Jury Instruction on Lesser-Included Offense

Next, Becerra claims that his trial counsel was ineffective in failing to offer a jury instruction on a lesser-included offense of false imprisonment or kidnapping as a Class II felony. The record before this court is insufficient to adequately review the question. See *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994). Even though the record indicates that Becerra's trial counsel did submit two proposed instructions to the court, the proposed instructions have not been made a part of the record on this appeal. At the instruction conference, the trial court asked Becerra's counsel if he had any objections to the court's instructions. Counsel replied by saying, "No. I accept them. I did submit two proposed instructions." The court then stated, "To the extent they are included in these they are granted. To the extent they are not included they are denied."

As previously noted, Becerra did not raise his claim of ineffective assistance of counsel at the trial court level. When the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id.* Without evidence of what instructions were tendered by Becerra's trial counsel, we cannot determine whether the tendered instructions were warranted by the evidence and a correct statement of the law.

The State argues that, in any event, Becerra's trial counsel would not have been ineffective for failing to submit to the trial court proposed instructions on first degree false imprisonment or kidnapping as a Class II felony because those offenses were not supported by the evidence presented at trial. Section 28-313(3) states that "[i]f the person kidnapped was voluntarily released or liberated alive by the abductor and in a safe place without having suffered serious bodily injury, prior to trial, kidnapping is a Class II felony." Initially, we point out that kidnapping as a Class II felony is not a separate offense from kid-

napping as a Class IA felony. *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 313 N.W.2d 438 (1981). The provisions of subsection (3) are only mitigating circumstances which may reduce the penalty for kidnapping, and the existence or nonexistence of the mitigating circumstances is a matter properly considered by the court at sentencing, not the jury. See *id.* Therefore, as a matter of law, Becerra was not entitled to a jury instruction on kidnapping as a Class II felony. Moreover, there was no evidence that would support a finding by the trial court at sentencing that Washington was *voluntarily* released or liberated alive by Becerra. Washington's escape was made possible only through his own efforts and a measure of good fortune.

However, given the state of the record, we cannot be as conclusive with regard to a possible instruction on first degree false imprisonment as a lesser-included offense of kidnapping. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Howard, ante* p. 523, 571 N.W.2d 308 (1997); *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994); *State v. Parks*, 245 Neb. 205, 511 N.W.2d 774 (1994). In determining whether an offense is a lesser-included one, a court looks initially not to the evidence in a particular case, but, rather, to the elements of the criminal offense. *State v. Howard, supra.*

The threshold question, therefore, is whether a person can commit the offense of kidnapping without at the same time committing the offense of first degree false imprisonment. A person commits false imprisonment in the first degree if he knowingly restrains or abducts another person (1) *under terrorizing circumstances* or under circumstances which expose the person to the risk of serious bodily injury or (2) with intent to hold him in a condition of involuntary servitude. Neb. Rev. Stat. § 28-314(1) (Reissue 1995). A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to (a) hold him for ransom or reward, (b) use him as a shield or hostage, (c) terrorize him or a third

person, (d) commit a felony, or (e) interfere with the performance of any government or political function. § 28-313(1). We cannot envision a situation in which a person abducts another and continues to restrain him with the intent to either terrorize him, commit a felony, use him as a shield or hostage, hold him for ransom or reward, or interfere with the performance of a government or political function where the circumstances would not simultaneously be "terrorizing" *or* "expose the person to the risk of serious bodily injury."

Stated another way, it is impossible to commit the greater offense of kidnapping without at the same time having committed the lesser offense of first degree false imprisonment. See, *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997); *State v. Null*, 247 Neb. 192, 526 N.W.2d 220 (1995). It is the *intent to terrorize* which distinguishes kidnapping from false imprisonment in the first degree. *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994). See, also, *State v. Miller*, 216 Neb. 72, 341 N.W.2d 915 (1983) (holding that kidnapping requires proof of specific intention, which is not element of false imprisonment). Therefore, first degree false imprisonment is a lesser-included offense of kidnapping. To the extent that the Nebraska Court of Appeals has held that first degree false imprisonment is not a lesser-included offense of kidnapping in *State v. Newman*, 5 Neb. App. 291, 559 N.W.2d 764 (1997), that holding is expressly overruled.

Ordinarily, the analysis would now shift to the second prong of the test, that is, whether the evidence presents a rational basis to support a possible verdict for acquittal of kidnapping and conviction of first degree false imprisonment. However, without evidence of what instructions were tendered by Becerra's trial counsel, we cannot determine whether the tendered instructions were warranted by the evidence and a correct statement of the law. It is also not possible, given the state of the record, to determine with reasonable probability whether any failure on the part of Becerra's trial counsel at the instruction conference prejudiced Becerra such that, but for his counsel's alleged failure to object to the court's instructions or to offer alternative jury instructions warranted by the evidence and the law, the result of the trial would have been different. See *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994).

Because this issue was not raised or ruled on by the trial court and the matter may necessitate an evidentiary hearing, if an appropriate motion is filed containing facts which properly allege an infringement of Becerra's rights under the Nebraska or federal Constitution, we will not address the issue on direct appeal. See *id.*

### (d) Trial Counsel's Request for Probation

Finally, we note that in the "Nature of the Case" subsection of appellant's brief, Becerra discusses his trial counsel's unfamiliarity with the penalty for kidnapping, as allegedly demonstrated during the sentencing hearing. Becerra's counsel requested that the sentence be probation. The trial judge stated that kidnapping is a Class IA felony, which carries a mandatory sentence of life in prison. Becerra again mentions the alleged deficiency in the "Conclusion" section of his brief. An appellate court does not consider errors which are argued but not assigned. *State v. McBride, supra; State v. Lopez,* 249 Neb. 634, 544 N.W.2d 845 (1996). Not only did Becerra fail to assign his trial counsel's statements at the sentencing hearing as evidence of error, Becerra did not actually argue the issue, or the nature of the alleged prejudice, in the body of his brief. Rather, Becerra merely mentioned his trial counsel's statements at sentencing in the "Nature of the Case" subsection of his brief, and then extrapolated that it was evidence of the deficient performance of trial counsel in the conclusion of his brief. Because the issue was neither assigned as an error nor properly argued on appeal, we decline to consider the issue.

### VI. CONCLUSION

For the foregoing reasons, we conclude that all of Becerra's assigned errors are without merit and affirm the judgment of the district court.

AFFIRMED.