STATE OF NEBRASKA, APPELLEE, V.
EUSEBIO L. BECERRA, APPELLANT.
624 N.W.2d 21

Filed April 6, 2001. No. S-00-711.

Eusebio L. Becerra, pro se.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

After conducting an evidentiary hearing, the district court for Sarpy County entered an order denying Eusebio L. Becerra's motion for postconviction relief. This is an appeal from that order. Finding no error, we affirm the judgment of the district court.

## BACKGROUND

Following a 1996 jury trial, Becerra was convicted of kidnapping and use of a firearm in the commission of a felony. He was sentenced to life imprisonment on the kidnapping charge

and to a consecutive term of imprisonment of 2 to 5 years on the use of a firearm charge. We affirmed the convictions and sentences on direct appeal in *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998). The facts upon which the convictions are based are set forth in detail in that opinion, and we briefly summarize them here.

Acting in concert with a person he identified as Daniel Gonzalez, Becerra abducted Melvin Washington, Jr., on January 5, 1996, as Washington was leaving his place of employment in Omaha. Washington testified at trial as a witness called by the State, and Becerra testified in his own defense. The two men gave differing accounts of the abduction.

Washington testified that as he left his place of employment at approximately 6:30 p.m. on January 5, 1996, he observed a red two-door Blazer occupied by three men including Becerra, to whom he owed money for drugs. According to Washington, Becerra exited the vehicle holding a 9-mm handgun and inquired about the money as he loaded the weapon. After a conversation between Becerra and Gonzalez in which the two men discussed what they were going to do with Washington, Becerra and Washington entered a vehicle owned by Washington's sister while Gonzalez reentered the Blazer with the third, unidentified individual. According to Washington, Becerra held the gun on him and ordered him to follow the Blazer. While driving around the city in this fashion, Becerra repeatedly told Washington that he had "messed up." Eventually, the two vehicles stopped and all four men entered an Oldsmobile. According to Washington, he was ordered into the rear seat of the Oldsmobile with Gonzalez, who was holding an assault rifle aimed at Washington's feet. They then drove around Omaha for an additional period of time. Washington testified that he believed the men were looking for a place to execute him because after exiting the vehicle and checking a warehouse, Becerra told Gonzalez that there were too many cars in the area and that it was not a good spot.

Washington testified that the men then drove him to Lake Manawa in Iowa and that Becerra told him to remove his clothing. Washington complied, taking off everything except his T-shirt, boxer shorts, and socks. He was then ordered out of the

vehicle, where the temperature outside was below freezing. Washington testified that Becerra and Gonzalez were each holding weapons. Becerra continued telling him that he had "messed up" and instructed Washington to come toward them so that Becerra could place his weapon in Washington's mouth. Washington did not comply but turned to walk away, and as he did, Gonzalez and Becerra followed and began kicking and beating him. Washington testified that Becerra hit him in the face with the handgun and that Gonzalez hit him in the back with the rifle. Washington retaliated by striking both Becerra and Gonzalez and was able to escape by running across the frozen lake and hiding in a snowbank until Gonzalez and Becerra left the area. Washington then made his way to a nearby home where he sought and obtained assistance.

In his trial testimony, Becerra denied that he had ever sold drugs but admitted that he arranged a sale of drugs by Gonzalez to Washington for which Washington failed to make payment. Becerra testified that Gonzalez was upset at this and threatened Becerra and his family with harm if the debt was not paid. Becerra testified that on January 5, 1996, Gonzalez picked him up at his home and told him that he needed the money and that Becerra participated in the abduction because he had no other choice. Becerra denied possessing a weapon or harming Washington in any way. He admitted that Gonzalez threatened Washington during the abduction, but claimed that his role was limited to translating between Spanish and English to enable Gonzalez to communicate with Washington.

In his direct appeal, Becerra contended that the evidence was insufficient to sustain his conviction and that he was denied effective assistance by his trial counsel, who was not the same attorney who represented him on appeal. We noted that the evidence clearly supported the conclusion that Becerra had abducted and restrained Washington on January 5, 1996. As to the element of intent, under the standard by which we review the sufficiency of evidence to support a criminal conviction, we held that "[t]here can be no serious dispute that the evidence regarding Washington's abduction and continued restraint, when taking the view most favorable to the State, sufficiently establishes Becerra's intent to terrorize Washington." *State v. Becerra*, 253

Neb. 653, 660, 573 N.W.2d 397, 403 (1998). We also held that Becerra failed to establish ineffective assistance of counsel based upon allegations that his trial counsel failed to object to certain exhibits and leading questions.

We then addressed Becerra's contention on direct appeal that his trial counsel was ineffective because he did not request a lesser-included offense instruction on first degree false imprisonment. Noting that it is the *"intent to terrorize* which distinguishes kidnapping from false imprisonment in the first degree," we held that first degree false imprisonment is a lesser-included offense of kidnapping and overruled the holding to the contrary in *State v. Newman,* 5 Neb. App. 291, 559 N.W.2d 764 (1997). (Emphasis in original.) *Becerra,* 253 Neb. at 665, 573 N.W.2d at 405. However, we concluded that the record was insufficient to determine the second prong of the test utilized to determine whether a lesser-included instruction could have been given, i.e., whether "the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense." *Id.* at 664, 573 N.W.2d at 405.

On January 28, 1999, Becerra, acting pro se, filed a verified motion for postconviction relief alleging that he was deprived of his constitutional right to effective assistance of counsel at trial and on direct appeal. Becerra alleged that his constitutional right to effective assistance of counsel was violated: (1) by his trial counsel's failure to discuss with him a plea bargain offer allegedly made by the prosecution; (2) by his trial counsel's failure to perform adequate discovery, resulting in trial counsel's failure to object to alleged misrepresentations by a law enforcement officer who testified at trial regarding a statement made by Becerra; (3) by his trial counsel's failure to understand the charges against Becerra, thus prejudicing his defense; and (4) by his appellate counsel's failure to properly raise, on direct appeal, the issue of his trial counsel's inability to understand the charges. Becerra also moved for appointment of counsel. On or about February 2, an attorney was appointed to represent Becerra in this proceeding. However, on July 30, an attorney retained by Becerra entered an appearance on his behalf, and his appointed counsel was granted leave to withdraw on August 10. Becerra's retained counsel represented him

throughout the remainder of the postconviction proceedings before the district court.

On April 24, 2000, the district court held an evidentiary hearing on Becerra's postconviction motion. The former deputy Sarpy County Attorney who prosecuted Becerra was called to testify on Becerra's behalf. The prosecutor stated that he did not offer a plea agreement to Becerra and did not recall any discussions with Becerra's trial counsel on this subject. He explained that if he had been approached, he would have entered into plea negotiations.

Becerra also testified at the evidentiary hearing. He stated that he first became aware that a conviction for kidnapping would result in a mandatory life sentence when he was sentenced for his conviction. On cross-examination, Becerra stated he did not remember the judge's informing him of the charges and penalties he was facing. He stated that he was initially represented by the Sarpy County public defender's office, but subsequently retained the attorney who represented him at trial. According to Becerra, his trial counsel informed him that he was facing 7 to 14 years of imprisonment for the kidnapping charge and 3 to 5 years of imprisonment for the use of a deadly weapon to commit a felony charge. Becerra also indicated that his trial counsel never advised him of the possibility of pleading to a lesser charge. He noted that he would have pled guilty to a lesser charge if he had known he was facing life in prison. He also contended that his trial counsel did not discover a police report which contained a statement by Becerra regarding the events of the evening in question. On cross-examination, Becerra stated that he was not sure if the report was in his retained trial counsel's file. However, he did acknowledge that he spoke to his retained trial counsel about the statement he had made to police.

Becerra's trial counsel testified at the evidentiary hearing. He stated that he asked Becerra before trial if he wished to enter into plea negotiations and that Becerra told him emphatically that he did not. He also testified that he discussed with Becerra the statements Becerra had made to the police. Additionally, the attorney testified regarding two proposed jury instructions which he submitted on Becerra's behalf. The first was a choice of lesser harm instruction, and the second was an instruction stating the attorney's theory of the case which was that "Eusebio

Becerra's participation in the events of January 5, 1996 was only to protect Melvin Washington, Becerra, and Becerra's family from a greater harm that Becerra believed might have resulted, had Becerra not done what he did." Before submitting these instructions, the attorney consulted with two other attorneys whom he considered to be experienced in the criminal defense practice. He recalled speaking to Becerra in general terms regarding these instructions and stated that these theories were based on the totality of the circumstances and were developed using his best judgment. On cross-examination, the attorney testified that he informed Becerra that a mandatory life sentence would be imposed if Becerra was convicted of kidnapping.

The Sarpy County public defender also appeared as a witness at the evidentiary hearing. He testified that he represented Becerra at the preliminary hearing and arraignment and that during this representation, no plea agreement was offered by the prosecutor. Although he did not recall specifically explaining to Becerra the penalties he would face if convicted of the charges, the public defender explained that he certainly would have followed his normal practice of doing so during his first interview with a defendant. He also testified that it was customary for the district judge at the arraignment to inform the defendant of the charges involved and the possible penalties.

At the conclusion of the hearing, the district judge asked that Becerra's arraignment proceeding be transcribed and offered for the record. That proceeding was later transcribed and received into evidence on April 26, 2000. The transcript of the arraignment reflects that Becerra was advised that the maximum penalty for a conviction of kidnapping was life in prison.

On June 22, 2000, the district court filed an order denying Becerra's motion. The order addressed each of Becerra's specific allegations of denial of effective assistance of counsel which were set forth in the motion. As to Becerra's allegation that trial counsel failed to advise him of an offer for a plea agreement, the district court found that based on the evidence adduced at the hearing, no offer of a plea agreement was ever made. The district court noted the testimony of Becerra's trial counsel that Becerra emphatically told him he did not want to enter into any plea negotiations.

Addressing the allegation that Becerra's trial counsel had been ineffective in conducting discovery, the district court found that the evidence did not support the conclusion that Becerra's trial counsel did not have the police report in question. Furthermore, the district court found no evidence demonstrating that the law enforcement officer's testimony at trial was false or incorrect. Thus, the district court reasoned that while the testimony may have been impeached, it also may have provided the officer an opportunity to explain or amplify his answer. Given these findings, the district court found that ineffective assistance of counsel was not proved.

Regarding Becerra's allegation that trial counsel did not understand the charges against him and therefore conducted an ineffective defense, the district court found that even if it accepted the allegation as true, Becerra suffered no prejudice. The district court reasoned that "[a]lthough defense theories or tactics may be shown, by hindsight, to be incorrect or without merit, unless it is shown such theories or tactics (assuming they do not meet the appropriate standard for effective representation) caused prejudice, they furnish no grounds for postconviction relief." Based upon the district court's disposition of this issue, it rejected Becerra's allegation that his counsel on direct appeal had been ineffective in not raising it.

Becerra perfected this pro se appeal.

### ASSIGNMENTS OF ERROR

Becerra asserts four assignments of error, which we quote verbatim:

1. The District Court erred in finding Appellant's trial counsel was not ineffective for failing to understand the charges against the Appellant.

2. The District Court erred in finding Appellant's direct appeal counsel was not ineffective for failing to properly raise Error #1 on direct appeal.

3. Appellant's postconviction counsel was ineffective for not arguing the ineffective assistance of trial counsel for failing to request a lesser-included offense instruction, thus violating the Appellant's right to the Due Process of Law.

4. The record shows it was plain error not to give the lesser-included offense jury instruction for first degree false imprisonment [at] the Appellant's trial.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Silvers*, 260 Neb. 831, 620 N.W.2d 73 (2000); *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000). In order to establish a right to postconviction relief based on a claim of ineffective counsel at trial or on direct appeal, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Silvers, supra*; *State v. Soukharith, supra*.

## ANALYSIS

In his brief, Becerra characterizes his four assignments of error as "interrelated and dependent upon one another." Brief for appellant at 8. He argues that he was prejudiced by his trial counsel's failure to request a lesser-included offense instruction; that counsel on direct appeal, while raising this issue, was ineffective in failing to present a record to support it; and that his postconviction counsel was ineffective in failing to raise the issue that both trial and appellate counsel were ineffective in this regard. Thus, Becerra's entire argument in this appeal relates to a claim that he was prejudiced by the fact that a lesser-included offense instruction was not requested or given at his trial.

This claim, however, was not asserted in Becerra's pro se motion for postconviction relief. The only reference in that motion to a lesser-included offense is the allegation that Becerra's trial counsel discussed this subject with the prosecutor, received an offer to allow him to plead guilty to a lesser offense, and failed to communicate the offer to him. Based upon the testimony of the prosecutor, the public defender, and Becerra's trial counsel that no plea agreement was ever proposed or discussed, the district court properly rejected this claim

for postconviction relief without addressing whether a lesser-included offense instruction on first degree false imprisonment should have been requested or given at trial.

██ We have held that in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Narcisse*, 260 Neb. 55, 615 N.W.2d 110 (2000); *State v. El-Tabech*, 259 Neb. 509, 610 N.W.2d 737 (2000). An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief. *State v. Casper*, 219 Neb. 641, 365 N.W.2d 451 (1985). Accordingly, we do not reach Becerra's first, second, and fourth assignments of error.

Apparently recognizing this deficiency in his motion for postconviction relief, Becerra contends in his third assignment of error that "postconviction counsel was ineffective for not arguing the ineffective assistance of trial counsel for failing to request a lesser-included offense instruction." We have held that Nebraska does not recognize a constitutional claim based upon ineffectiveness of postconviction counsel. *State v. Gray*, 259 Neb. 897, 612 N.W.2d 507 (2000). Becerra contends, however, that a right to the effective assistance of postconviction counsel arises from Neb. Rev. Stat. § 29-3004 (Reissue 1995), which provides:

> The district court may appoint not to exceed two attorneys to represent the prisoners in all proceedings under sections 29-3001 to 29-3004. The district court, upon hearing the application, shall fix reasonable expenses and fees, and the county board shall allow payment to the attorney or attorneys in the full amount determined by the court. The attorney or attorneys shall be competent and shall provide effective counsel.

Becerra relies upon the last sentence of this statute, which was added by amendment in 1993. See 1993 Neb. Laws, L.B. 652. He argues that this provision creates a statutory right which is guaranteed under the Due Process Clauses of the federal and the state Constitutions.

We have previously held that appointment of counsel in post-conviction proceedings pursuant to § 29-3004 is not a matter of right, but, rather, is discretionary with the trial court such that the failure to appoint counsel is not error in the absence of an abuse of discretion. *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000); *State v. Livingston*, 244 Neb. 757, 509 N.W.2d 205 (1993). Whether § 29-3004 has any application to this case is unclear. On its face, it pertains to postconviction counsel who are appointed by the court pursuant to what we have held to be discretionary statutory authority. As noted, Becerra filed his motion for postconviction relief pro se. He was then represented by appointed counsel for a period of approximately 6 months, during which time no proceedings in the case are reflected in the record. Appointed counsel was then given leave to withdraw, and Becerra was represented by retained counsel from July 30, 1999, through the evidentiary hearing on April 24, 2000. We cannot determine from the record or briefs whether Becerra's claim of ineffective assistance of postconviction counsel is directed at his appointed counsel, his retained counsel, or both. The record does not reflect whether Becerra requested either attorney to raise the lesser-included offense issue in this postconviction proceeding, nor does the record reflect why the issue which Becerra now argues in his pro se appellate briefs was not asserted by him in his pro se motion for postconviction relief.

We need not address these questions in order to resolve this appeal because we conclude from the record that Becerra was not deprived of effective assistance of counsel at trial by virtue of the fact that his attorney did not request a lesser-included offense instruction on first degree false imprisonment. A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Wright*, 261 Neb. 277, 622 N.W.2d 676 (2001); *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000). It is not prejudicial error to not instruct upon a lesser-included

offense when the evidence entirely fails to show an offense of a lesser degree than that charged in the information. *State v. Cebuhar*, 252 Neb. 796, 567 N.W.2d 129 (1997). Where the prosecution has offered uncontroverted evidence on an element necessary for a conviction of the greater crime but not necessary for the lesser offense, a duty rests on the defendant to offer at least some evidence to dispute this issue if he or she wishes to have the benefit of a lesser-offense instruction. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). Here, it is undisputed that Becerra actively participated with Gonzalez in the abduction and restraint of Washington. Becerra argues, however, that the finder of fact could have determined that he lacked the requisite intent to support a conviction for kidnapping.

■ Nebraska's aider and abettor statute, Neb. Rev. Stat. § 28-206 (Reissue 1995), provides that "[a] person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." In Becerra's trial, the jury was so instructed without objection. When a crime requires the existence of a particular intent, an alleged aider or abettor can be held criminally liable as a principal if it is shown that the aider or abettor knew that the perpetrator of the act possessed the required intent or that the aider or abettor himself or herself possessed the required intent. *State v. Sims*, 258 Neb. 357, 603 N.W.2d 431 (1999); *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998); *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996). As noted in our opinion resolving Becerra's direct appeal, intent may be inferred from the words and acts of the accused and from the facts and circumstances surrounding the conduct. *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998).

"A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to . . . [t]errorize him or a third person." Neb. Rev. Stat. § 28-313(1)(c) (Reissue 1995). "A person commits false imprisonment in the first degree if he knowingly restrains or abducts another person . . . under terrorizing circumstances or under circumstances which expose the person to the risk of serious bodily injury." Neb. Rev. Stat. § 28-314(1)(a) (Reissue 1995). We stated in

Becerra's direct appeal that "[i]t is the *intent to terrorize* which distinguishes kidnapping from false imprisonment in the first degree." (Emphasis in original.) *Becerra*, 253 Neb. at 665, 573 N.W.2d at 405. Becerra now argues that he "was present at the abduction, but his defense was, and evidence was presented to show, that he did not intend to harm or terrorize the victim. *That was Mr. Gonzalez's intent, not the Appellant's.*" (Emphasis supplied.) Brief for appellant at 10.

This statement and Becerra's trial testimony establish without question that he knew of Gonzalez' intent at the time of the abduction. Becerra admitted that he knew that Gonzalez was angry because Washington had not paid for the drugs, and he testified that he hoped that they would not encounter Washington on the evening of the abduction "[b]ecause I didn't want nothing to happen to him." During the abduction and detention, Becerra knew that Gonzalez was threatening Washington with harm because he was translating Gonzalez' words from Spanish to English so that Washington could understand them. Because Becerra admitted that he actively assisted Gonzalez in the abduction with knowledge of his intent, there was no rational basis upon which the jury could have acquitted him of kidnapping but convicted him of first degree false imprisonment. The trial court did not err in not giving a lesser-included offense instruction. The fact that Becerra's trial counsel did not request one, but instead requested instructions reflecting Becerra's claim that he acted under the duress of threats from Gonzalez, was a matter of legitimate trial strategy which was consistent with Becerra's own testimony and was not prejudicial to his defense.

## CONCLUSION

For the reasons discussed, we conclude that the district court did not err in denying Becerra's motion for postconviction relief and therefore affirm its judgment.

AFFIRMED.